E. P. COHOON v. J. L. HARRELL.

(Filed 15 September, 1920.)

1. **Contracts— Customs—Evidence—Presumptions,—Timber—Sawmills—
    Lumber—Slabs.**

A lawful and existing business custom or usage, clearly established,
concerning the subject-matter of a contract, may be received in evidence
to explain ambiguities therein, or to add stipulations about which the
contract is silent, and where such a custom is known to the parties, or its
existence is so universal and prevailing that knowledge will be imparted,
the parties will be presumed to have contracted in reference to it, unless
excluded by the express terms of the agreement between them.

2. **Same.**

A parol contract of purchase for timber specified that the purchaser
was to cut the timber from the vendor's land, and to pay the latter,
the plaintiff in this action, a certain price per thousand feet when
sawed into lumber; that the purchaser had the timber sawed at the
defendant's mill, who used or sold the slabs, and the plaintiff sues to
recover them or their value.  There was nothing said either in the plain-
tiff's contract with the purchaser or the latter's contract with the defend-
ant about the disposition to be made of the slabs, and there was an estab-
lished custom in this locality that they should belong to the mill sawing
the logs:  *Held,* it appeared from the contract between the plaintiff and

the purchaser that the timber was to be sawed at some mill, and the defendant was entitled to the slabs under the prevailing custom.

**3. Evidence—Contracts—Parol Agreements—Subsequent Writings—Timber—Lumber—Sawmills—Slabs.**

The plaintiff, by a parol contract, sold the timber on his land, to be cut, removed, and sawed by the purchaser, and paid for at a certain price per thousand feet, who had the same sawed at defendant's mill; and a controversy having arisen between the plaintiff and defendant as to the ownership of the slabs, the plaintiff thereafter procured from the purchaser a written statement that he only bought the lumber to be sawed from the trees, etc.: *Held,* the parol agreement of purchaser as established controlled the question as to whether, under an established custom, the slabs belonged to the defendant, the owner of the mill where the trees were sawed.

CIVIL ACTION, tried before *Cranmer, J.,* and a jury, at April Term, 1920, of TYRRELL.

The action is to recover a lot of slabs and billets of wood, or the value thereof, claimed by plaintiff, and used or consumed by defendant, and on the trial the evidence tended to show that plaintiff, the owner of a lot of timber on his own land, sold the same to one H. W. Brantley at $9 per thousand, board measure; that said Brantley cut and hauled the timber to defendant's mill, who sawed the same at $5 per thousand; that there was cut for Brantley 93,000 feet of this lumber; that there was no contract with plaintiff about the sawing, nor, in the contract with Brantley, about the slabs, and defendant had consumed these slabs or sold them in accord with a universal custom in that vicinity that the slabs belonged to the mill man who sawed the lumber. Numerous witnesses on the part of the defendant testified that it had long been the recognized and general rule and usage in the mill business that the slabs belong to the mill man who cuts the timber; that the recognized custom is general, and prevailed in Tyrrell and adjoining counties, and throughout eastern North Carolina. It was shown, too, that plaintiff, in having lumber sawed for himself, acted on the custom, and made no claim for the slabs. In this connection, the court charged the jury: "That if they should find from the greater weight of the evidence that it was the general, well established rule, custom, and usage in this community, and in Tyrrell County, when logs were sawed at mill, that the sawmill man got the slabs unless there was an agreement to the contrary, and this custom was known to plaintiff and defendant, and the jury should find further that these logs were sawed at the mill of defendant for Brantley and no contract was made as to the ownership of the slabs either by Brantley or plaintiff, then the slabs would not belong to plaintiff."

There was verdict for defendant. Judgment, and plaintiff excepted and appealed, assigning errors.

*Majette & Whitley for plaintiff.*
*T. H. Woodley and Aydlett & Simpson for defendant.*

Hoke, J.   It is the accepted principle here and elsewhere that a lawful and existent business custom or usage, clearly established, concerning the subject-matter of a contract, may be received in evidence to explain ambiguities therein, or to add stipulations about which the contract is silent, and, further, where such a custom is known to the parties, or its existence is so universal and all prevailing that knowledge will be imputed, the parties will be presumed to have contracted in reference to it, unless excluded by the express terms of the agreement between them. *Oil Co. v. Burney,* 174 N. C., 382; *Riddick v. Dunn,* 145 N. C., 31; *Brown v. Atkinson,* 91 N. C., 389; 17 Corpus Juris, 492, *et seq.;* Lawson on Presumptive Evidence, pp. 16-17; Anson on Contracts, p. 328.

The portion of his Honor's charge excepted to is in accord with these authorities, and we find nothing in the record that withdraws, or tends to withdraw, the claim of plaintiff from the effect and operation of the principle.

The evidence of both plaintiff and H. W. Brantley, the purchaser of the timber, was to the effect that in the contract of sale, which was in parol, plaintiff sold to Brantley "all merchantable timber to be cut from the Simmons place at $9 per thousand feet, board measure.   Merely that and nothing more."   The contract between Brantley and defendant, the mill man, also in parol, was that the latter was to saw the lumber as the stocks were delivered at the mill by Brantley, at $5 per thousand, and in neither contract was anything said about the slabs.   It was shown to be the universal custom, in Tyrrell and adjoining counties, that the mill man was to have the slabs.   It appears, also, while plaintiff was not informed of the exact terms of the contract between Brantley and defendant, it was well understood, and was the clear purport of the contract of sale that the lumber was to be sawed at some mill, and, as a matter of fact, that plaintiff went with Brantley to this mill at the time the arrangement for sawing was made, and further, that a considerable portion of the lumber had been sawed before plaintiff made any claim for the slabs.   True that after the controversy arose about them, plaintiff induced Brantley, the purchaser, to sign a written instrument, purporting to state a contract between plaintiff and Brantley, for sale of the timber on the Simmons place, and containing also a further stipulation as follows:

"It is understood that the said Cohoon is only selling Brantley the sawed lumber to be obtained from said pine trees, and that said Brantley

bears all the expenses of felling said trees, sawing them into logs, hauling the logs to the mill, and the costs of sawing the logs into lumber."

No one claims or testifies that the parol contract, which controls in the matter, was expressed in the terms of the written stipulation. Brantley, testifying on the subject, says "that the contract between them, as stated, was that plaintiff sold to witness all the merchantable timber on plaintiff's Simmons place at $9 per thousand, board measure, and he only signed this paper at plaintiff's instance, to show that he, the witness, had nothing to do with the slabs." This written memorandum, therefore, neither is nor purports to be the contract as expressed in the agreement of the parties, and, at most, is only the plaintiff's estimate of what the parol contract signified. Whatever may have been the effect of this written addenda on the rights of the parties, plaintiff and defendant, the parol contract, the binding agreement between them, leaving the matter at large, the right to the slabs would go to the mill man, under the custom prevailing and known to the parties, and verdict and judgment to that effect must be affirmed.

No error.