CLEVELAND CONSTRUCTION, INC., Plaintiff v. ELLIS-DON CONSTRUCTION, INC.;
HKS, INC.; STATE OF NORTH CAROLINA THROUGH THE UNIVERSITY OF
NORTH CAROLINA HEALTH CARE SYSTEM; THE UNIVERSITY OF NORTH
CAROLINA HOSPITALS AT CHAPEL HILL; FEDERAL INSURANCE COMPANY;
THE TRAVELERS CASUALTY AND SURETY COMPANY F/K/A THE AETNA CASU-
ALTY AND SURETY COMPANY, Defendants

No. COA10-525

(Filed 5 April 2011)

**1. Estoppel— quasi-estoppel—received periodic payments
without conditions—construction claims**

The trial court did not err in a construction claims case by
granting partial summary judgment in favor of defendant EDCI on
plaintiff CCI's extra/changed work, delay/disruption, and ineffi-
ciency claims. Based on the doctrine of quasi-estoppel, CCI was
precluded from asserting the claims which it expressly acknowl-
edged that it did not have as a condition of payment when it
received periodic payments based on the applications submitted.

**2. Estoppel— equitable estoppel—improper assertion of
statute of limitations defense**

The referee did not err in a construction claims case by con-
cluding that plaintiff CCI timely filed suit within the three-year
statute of limitations provided by N.C.G.S. § 1-52(1). Having
obtained, through third party settlements, funds derived from
CCI's claims, EDCI was equitably estopped from asserting the
statute of limitations as a defense to those claims.

**3. Evidence— extrinsic evidence—referee exceeded scope of
trial court's summary judgment order**

The referee erred in a construction claims case by consider-
ing extrinsic evidence regarding the scope of the trial court's
summary judgment order for the claims of delay, disruption, and
inefficiency damages occurring prior to 21 June 2001. The trial
court's order unequivocally stated that all claims not specifically
reserved by CCI arising prior to 21 June 2001 were barred.

**4. Interest— prejudgment—breach of contract claims—waiver**

The trial court did not err by awarding plaintiff CCI prejudg-
ment interest on disputed breach of contract claims from the date
of 3 November 2005. After the 1985 amendment to N.C.G.S. § 24-5(a),
interest is awarded as a matter of law once the relevant facts

CLEVELAND CONSTR., INC. v. ELLIS-DON CONSTR., INC.

[210 N.C. App. 522 (2011)]

have been established entitling the party to damages. By failing to contest the referee's finding regarding the date of breach, defendant EDCI waived review of that determination.

**5. Construction Claims— delay damages—concurrent delay— partial responsibility**

The trial court erred in a construction claims case by overruling defendant EDCI's exceptions to the referee's determination that EDCI was not entitled to recover delay damages from plaintiff CCI for a 12.5 week delay at the end of the project based on the principle of concurrent delay because EDCI was found to be not responsible for any portion of the delay. However, there was no authority supporting the proposition that CCI was fully liable for EDCI's delay damages despite being only partially responsible for the delay.

**6. Construction Claims— delay and disruption—cost sharing— doctrine of implication of unexpressed terms—customary practice**

The trial court did not err in a construction claims case by overruling its exception to the referee's requirement that plaintiff CCI share the costs defendant EDCI incurred in pursuing CCI's delay and disruption claims against the owner and designers of the project based on the doctrine of implication of unexpressed terms. There was no evidence regarding the existence of a customary practice in the construction industry concerning the sharing of recovery costs or CCI's actual or constructive knowledge of such a custom.

Appeal by plaintiff from order entered 11 April 2007 by Judge Paul G. Gessner and by plaintiff and defendants from judgment entered 1 December 2009 by Judge Robert H. Hobgood in Wake County Superior Court. Heard in the Court of Appeals 17 November 2010.

*Jordon Price Wall Gray Jones & Carlton, PLLC, by Henry W. Jones, Jr. and Brian S. Edlin; and Chamberlain, Hrdlicka, White, Williams & Martin, by Seth R. Price, Atlanta, Georgia, pro hac vice, for plaintiff.*

*Nigle B. Barrow, Jr.; and Hendrick Phillips Salzman & Flatt, by Martin R. Salzman, Atlanta, Georgia, pro hac vice, for defendants Ellis-Don Construction, Inc., Federal Insurance Company, and The Travelers Casualty and Surety Company.*

HUNTER, Robert C., Judge.

Plaintiff Cleveland Construction, Inc. ("CCI") appeals from the trial court's entry of partial summary judgment on CCI's extra/changed work, delay/disruption, and inefficiency claims against defendants Ellis-Don Construction, Inc. and its sureties, Federal Insurance Company and The Travelers Casualty and Surety Company (collectively, "EDCI"). After careful review, we affirm the summary judgment order. Both CCI and EDCI appeal from the trial court's final judgment adopting, with modifications, the report of the referee who conducted the evidentiary hearings in this case. We affirm in part and reverse in part.

## Factual and Procedural Background

This case arises out of the construction of the North Carolina Children's Hospital and the North Carolina Women's Hospital ("the project"), located in Chapel Hill, North Carolina. The University of North Carolina Hospitals ("UNCH"), a state "public body" and owner of the project, awarded the project on a multi-prime basis on 10 April 1997. UNCH entered into a contract with HKS, Inc. to design and manage the construction of the project. HKS hired Smith Seckman Reid, Inc. ("SSR") and Corley Redfoot Zack, Inc. ("CRZ") to serve as consultants on the project, with SSR providing services relating to the mechanical, plumbing, electric, and fire protection systems, and CRZ providing architectural services, including planning and design work, administration of the construction process, and inspections.

On 2 June 1997, UNCH awarded EDCI, a North Carolina licensed general contractor, the general contract ("prime contract") for the construction of the project. The original contract amount was for approximately $47.6M and the original contract duration was for 1,095 calendar days. The prime contract provided for liquidated damages for late completion and awarded a bonus for early completion. UNCH issued a notice to proceed on the project on 30 June 1997, with an original completion date of 30 June 2000.

As the general prime contractor on the public project, EDCI had statutory as well as contractual duties regarding scheduling and coordinating the work on the project. Under the prime contract, EDCI provided performance and payment bonds—issued by Federal and Travelers—ensuring completion of the project and payment of EDCI's subcontractors. The project was large and complex, involving construction of two new towers, renovations in the main hospital building, and construction of corridors connecting the towers to the main

building. The multi-prime project delivery system increased the difficulty in coordinating the work on the project. The project was "significantly troubled" and was not substantially completed until 24 March 2003, almost three years after the prime contract's original completion date. Problems during the project generated claims at every level—claims between the subcontractors and the prime contractors as well as claims between the primes and the owner and designers.

Pertinent to this appeal, EDCI and CCI entered into a subcontract on 15 October 1997, with CCI agreeing to furnish and install, in compliance with the prime contract's specifications, metal studs, drywall, firewalls, vapor barrier, insulation, and acoustical ceiling and ceiling tiles. The original subcontract price was for almost $6.6M. Throughout CCI's work on the project, CCI submitted to EDCI numerous change order requests ("CCIPIs") and extra work orders ("EWOs"). Under the subcontract, CCI submitted periodic payment applications, containing a sworn certification statement in which CCI "acknowledge[d] that it ha[d] no unsettled change order requests or claims" pending against EDCI as of the date each application was submitted. Beginning with its 20 August 2000 application for payment (No. 29) and continuing with each successive application, CCI attached an "Exhibit A," which listed all then-pending CCIPIs. Starting with CCI's 20 June 2001 payment application (No. 39), CCI began including in Exhibit A pending EWO claims in addition to the CCIPIs. CCI first listed claims for delay, disruption, and inefficiency damages in its 31 December 2001 payment application (No. 43).

As the project neared completion, EDCI informed its principal subcontractors, including CCI, that it intended to submit a claim for additional compensation to UNCH and the State Construction Office to recover costs it had incurred as a result of the problems associated with the project. To the extent that the subcontractors desired to participate, EDCI requested that they submit a claim to EDCI to "pass through" to the State. On 28 March 2003, CCI submitted a verified claim to EDCI, in which CCI requested approximately $4.2M. On 1 July 2003, EDCI submitted a verified claim, which included CCI's claim as well as the claims of other subcontractors, to the Director of the State Construction Office. A hearing on the claims was held at the State Construction Office on 28-29 April 2004.

On 3 October 2005, EDCI and UNCH executed a settlement agreement in which UNCH agreed to pay EDCI $5M in full settlement of its claims against UNCH. The agreement provides that both EDCI and UNCH "believe[d]" that the project's designers—HKS, SSR, and CRZ—

were "primarily and proximately responsible for the major problems encountered during the course of the Project[.]" The agreement specifies that the claims settled by the parties included EDCI's claims on its contract balance, liquidated damages, accrued interest, and change orders, but did not include any payment for delay/disruption or inefficiency damages, or subcontractor claims.

Shortly after settling with UNCH, EDCI received a demand letter from CCI, demanding payment on its extra/changed work claims as well as its remaining subcontract balance. EDCI responded in a letter dated 3 November 2005, refusing to pay the amount requested by CCI, explaining that it believed that numerous backcharges against CCI "substantially reduced" the amounts owed on CCI's claims. On 30 November 2004, CCI filed a complaint against EDCI, HKS, the State of North Carolina, UNCH, Federal, and Travelers, asserting claims for CCI's outstanding subcontract balance, extra/changed work, delay/disruption, and inefficiency damages.

While CCI's action was ongoing, on 21 December 2005, EDCI entered into a settlement agreement with HKS and SSR in which the designers made a lump sum payment of $5.5M to EDCI in exchange for EDCI releasing all its claims against HKS and SSR for "substantial additional costs incurred in performing its work on the Project . . . ." Roughly two years later, on 4 January 2007, EDCI settled its claims against the remaining designer, CRZ, with CRZ paying a lump sum of $390,000 to EDCI in consideration of EDCI's releasing all its claims against CRZ arising out of the project. As a result of the settlement agreements, EDCI received $10.89M from the project's owner and designers on its initial claim of over $21M.

CCI voluntarily dismissed the State and UNCH as defendants in this action, and the trial court granted HKS' motion for summary judgment on CCI's claims for failure to file its claims within the applicable statute of limitations period—leaving EDCI and its sureties, Federal and Travelers, as the remaining defendants in this lawsuit. On 4 December 2006, EDCI filed a motion for partial summary judgment on certain of CCI's extra/changed work, delay/disruption, and inefficiency claims, asserting, among other things, that "all such claims [we]re barred by the applicable statute of limitations"; and that those claims arising prior to certain dates were waived and released under oath by CCI in its periodic payment applications. After conducting a hearing on EDCI's motion, Superior Court Judge Paul G. Gessner entered partial summary judgment in favor of EDCI, ruling

that CCI had waived and released the challenged claims. Judge Gessner, however, denied EDCI's motion for partial summary judgment based on the statute of limitations.

In preparation for trial, a dispute arose between CCI and EDCI as to what claims were, in fact, barred by Judge Gessner's 11 April 2007 summary judgment order. Consequently, on 18 February 2008, EDCI filed a motion *in limine* to prevent CCI from presenting evidence at trial regarding (1) its claims for extra/changed work and delay/disruption damages that arose prior to 20 August 2000, and (2) its claims for extra/changed work and delay/disruption damages that arose between 21 August 2000 and 20 June 2001 that were not identified and reserved in Exhibit A in CCI's periodic payment applications. Although Superior Court Judge Robert H. Hobgood initially denied EDCI's motion *in limine*, he ultimately entered an order on 28 April 2008 granting EDCI's subsequent motion, providing:

> [CCI] shall not be allowed to submit any evidence related to delay, disruption, or labor inefficiency claims and/or damages against [EDCI]. . . . [I]t is not the intent of this Order to preclude [CCI] from presenting evidence of delay, disruption or lost efficiency claims, to the extent that [EDCI] did pass those claims through to third parties, and received payment thereon.

Prior to conducting a jury trial, Judge Hobgood determined that "this case involves the resolution of an issue that requires the examination of a long or complicated account in the field of public construction law" and that "[a] referee with expertise in public construction law and accounting is necessary to take testimony, review exhibits and report to the Court . . . ." As a result, Judge Hobgood referred the case to a referee pursuant to Rule 53 of the Rules of Civil Procedure. After conducting extensive evidentiary hearings, the referee submitted his report to Judge Hobgood on 14 July 2009. In his report, the referee awarded CCI the principal amount of $1,618,808, which consisted of CCI's subcontract balance of $369,951, and $1,248,857 based on CCI's extra/changed work, delay/disruption, and inefficiency claims. The referee also awarded CCI prejudgment interest on the "undisputed" subcontract balance.

Both CCI and EDCI filed exceptions to the referee's report. After holding a hearing on 15 October 2009, Judge Hobgood entered final judgment on 1 December 2009, largely adopting the referee's report and overruling the parties' exceptions. Judge Hobgood, however, modified the report to assess prejudgment interest on CCI's total

award, running from 3 November 2005 to the date of judgment. EDCI filed a motion to amend the final judgment on 3 December 2009, and Judge Hobgood denied the motion on 8 February 2010. CCI appeals from Judge Gessner's 11 April 2007 summary judgment order, and both CCI and EDCI appeal from Judge Hobgood's 1 December 2009 final judgment.

## Summary Judgment

[1]  CCI argues that entry of partial summary judgment was improper in this case. The standard of review of an order granting summary judgment requires a two-part analysis of whether (1) on the basis of the materials supplied to the trial court, there is a genuine issue of material fact and (2) the moving party is entitled to judgment as a matter of law. *Summey v. Barker*, 357 N.C. 492, 496, 586 S.E.2d 247, 249 (2003); N.C. R. Civ. P. 56(c). The moving party has the burden of demonstrating the lack of any triable issue of fact and entitlement to judgment as a matter of law. *Garner v. Rentenbach Constructors, Inc.*, 350 N.C. 567, 572, 515 S.E.2d 438, 441 (1999). The evidence produced by the parties is viewed in the light most favorable to the nonmoving party. *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000). A trial court's ruling on a motion for summary judgment is reviewed de novo as the court resolves only questions of law. *Va. Electric and Power Co. v. Tillett*, 80 N.C. App. 383, 385, 343 S.E.2d 188, 191, *cert. denied*, 317 N.C. 715, 347 S.E.2d 457 (1986).

CCI contends that Judge Gessner erred in entering summary judgment in EDCI's favor on CCI's extra/changed work, delay/disruption, and inefficiency claims[1]:

(1) As to all claims of the Plaintiff which arose prior to August 20, 2000, there is no genuine issue of material that all such claims were waived and released under oath; Defendants are, therefore, entitled to judgment as a matter of law, that all claims which arose prior to August 20, 2000 have been waived and released by Plaintiff and that Plaintiff is not entitled to recover any sum for such claims.

(2) As to all claims arising during the time frame of August 20, 2000 through and including June 20, 2001, there is no genuine issue of material that all of Plaintiff's claims not specifically

---

1. As the parties lump all of these claims together in their respective arguments, unless specified, we do not attempt to differentiate between them in addressing the parties' contentions.

**CLEVELAND CONSTR., INC. v. ELLIS-DON CONSTR., INC.**

[210 N.C. App. 522 (2011)]

reserved in its payment applications were waived and released under oath; Defendants are, therefore, entitled to judgment as a matter of law, that all claims arising after August 20, 2000 through and including June 20, 2001, which were not specifically reserved in Plaintiff's payment applications were waived and released by the Plaintiff and that Plaintiff is not entitled to recover any sum for all such claims not specifically reserved in the payment applications.

Judge Gessner ruled that CCI had "waived and released under oath" all of its unreserved claims arising prior to 21 June 2001 based on language in the parties' form labeled "Subcontractor's Application for Payment and Interim Waiver and Release Upon Payment," which provides in pertinent part:

CERTIFICATE OF SUBCONTRACTOR:

The undersigned mechanic and/or materialman ("Sub contractor") acknowledges that it has no unsettled change order requests or claims against said Contractor for said building or premises through the date hereof. Subcontractor also certifies that the payments, less applicable retention, have been made through the period covered by previous payments received from the Contractor to (1) all subcontractors (sub-subcontractors) and (2) for all materials and labor used in or in connection with the performance of the Subcontract. . . . This certification is for the benefit of, and may be relied upon by the owner, the prime contractor, the construction lender, the principal and surety on any labor/material bond. This certification is made upon personal knowledge.

INTERIM WAIVER AND RELEASE UPON PAYMENT:

The undersigned mechanic and/or materialman has been employed by Ellis-Don Construction, Inc. to furnish <u>LABOR & MATERIALS</u> (describe materials and/or labor) for the construction of improvements known as <u>UNCH</u> which is located in the City of <u>CH</u>, County of Orange, and is owned by <u>UNIV. OF NORTH CAROLINA</u> (name of owner) and more particularly described as follows: <u>101 MANNING DRIVE, CHAPEL HILL, NC</u> (Describe the property upon which the improvements were made by either a metes and bounds description, the land lot district, block and lot number, or street address of the project)

Upon receipt of the sum of $_____, the mechanic and/or materialman waives and releases any and all liens or claims of

lien it has upon the foregoing described property through the date of _____, and excepting those rights and liens that the mechanic and/or materialman might have in any retained amounts on account of labor or materials, or both, furnished by the undersigned to or on account of said contractor for said building or premises.

The payment applications were signed by CCI under seal and notarized.

EDCI contends that CCI's assertion of its unreserved pre-21 June 2001 claims in this lawsuit is inconsistent with CCI's "[c]ertificat[ion]" in its periodic payment applications "acknowledg[ing] that it has no unsettled change order requests or claims against [EDCI] for said building or premises through the date [of application]." Thus, EDCI argues, the doctrine of "quasi-estoppel" operates to bar CCI from asserting these claims in this lawsuit. Under the quasi-estoppel theory, also known as "estoppel by benefit," a party who "accepts a transaction or instrument and then accepts benefits under it may be estopped to take a later position inconsistent with the prior acceptance of that same transaction or instrument." *Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 18, 591 S.E.2d 870, 882 (2004). As the "essential purpose of quasi-estoppel . . . is to prevent a party from benefitting by taking two clearly inconsistent positions[,]" *B & F Slosman v. Sonopress, Inc.*, 148 N.C. App. 81, 88, 557 S.E.2d 176, 181 (2001), it is an "inherently flexible" doctrine and "cannot be reduced to any rigid formulation[,]" *Whitacre P'ship*, 358 N.C. at 18, 591 S.E.2d at 882. Quasi-estoppel "does not require detrimental reliance" by the party asserting the doctrine, "but is directly grounded instead upon a party's acquiescence or acceptance of payment or benefits, by virtue of which that party is thereafter prevented from maintaining a position inconsistent with those acts." *Godley v. Pitt County*, 306 N.C. 357, 361-62, 293 S.E.2d 167, 170 (1982).

Here, under the terms of the payment application, CCI received periodic payments under the subcontract with EDCI in exchange for its certified "acknowledg[ment]" that, when it submitted its application, it had "no unsettled change order requests or claims" against EDCI. As the application specifies, the owner of the project and EDCI, as the prime contractor, as well as others, intended to "rel[y]" on "[t]his certification." Having received periodic, CCI is now precluded from asserting the claims which it expressly "acknowledge[d]" that it did not have as a condition of payment.

While Judge Gessner granted EDCI's motion for partial summary judgment on CCI's unreserved pre-21 June 2001 claims on the basis that CCI had waived and released these claims, our Supreme Court has explained that "[i]f the granting of summary judgment can be sustained on any grounds, it should be affirmed on appeal." *Shore v. Brown*, 324 N.C. 427, 428, 378 S.E.2d 778, 779 (1989). The trial court's entry of partial summary judgment on CCI's claims is, consequently, affirmed.

### Final Judgment

Both CCI and EDCI challenge Judge Hobgood's final judgment adopting, with modifications, the referee's report. Where, as here,

"exceptions are taken to a referee's findings of fact and law, it is the duty of the [trial] judge to consider the evidence and give his own opinion and conclusion, both upon the facts and the law. He is not permitted to do this in a perfunctory way, but he must deliberate and decide as in other cases—use his own faculties in ascertaining the truth and form his own judgment as to fact and law. This is required not only as a check upon the referee and a safeguard against any possible errors on his part, but because he cannot review the referee's findings in any other way."

*Quate v. Caudle*, 95 N.C. App. 80, 83, 381 S.E.2d 842, 844 (1989) (quoting *Thompson v. Smith*, 156 N.C. 345, 346, 72 S.E. 379, 379 (1911)) (emphasis omitted). "After conducting this review, the trial court may adopt, modify, or reject the referee's report in whole or in part, remand the proceedings to the referee, or enter judgment." *Gaynor v. Melvin*, 155 N.C. App. 618, 622, 573 S.E.2d 763, 766 (2002); N.C. R. Civ. P. 53(g)(2).

In reviewing the trial court's judgment entered on the referee's report, "the findings of fact by a referee, approved by the trial [court], are conclusive on appeal if supported by any competent evidence." *Trucking Lines. v. Insurance Corp.*, 250 N.C. 732, 733, 110 S.E.2d 293, 294 (1959) (per curiam). Similarly, as the trial court has the authority to affirm, modify, or disregard the referee's findings and make its own findings upon review of the parties' exceptions to the referee's report, different or additional findings by the court are binding on appeal if they are supported by competent evidence. *Hughes v. Oliver*, 228 N.C. 680, 686, 47 S.E.2d 6, 10 (1948); *Biggs v. Lassiter*, 220 N.C. 761, 769-70, 18 S.E.2d 419, 423-24 (1942). Any conclusions of law made by the referee, however, are reviewed de novo by the trial court, and the trial court's conclusions are reviewed de novo by the

appellate court. *See U.S. Energy Corp. v. Nukem, Inc.*, 400 F.3d 822, 830 (10th Cir. 2005) ("Although this court has not previously stated a standard of review for a district court's review of a special master's legal conclusions, since the district court's review is de novo, it follows that we in turn would review the district court's legal conclusions de novo.").

### A. Statute of Limitations

[2] EDCI first contends that the referee erroneously concluded that CCI timely filed suit within the three-year statute of limitations provided by N.C. Gen. Stat. § 1-52(1) (2009). CCI counters, however, that EDCI should be equitably estopped from asserting the statute of limitations as a defense to its claims.[2]

As this Court has explained, "a defendant may properly rely upon a statute of limitations as a defensive shield against 'stale' claims, but may be equitably estopped from using a statute of limitations as a sword, so as to unjustly benefit from his own conduct which induced a plaintiff to delay filing suit." *Friedland v. Gales*, 131 N.C. App. 802, 806, 509 S.E.2d 793, 796 (1998). The doctrine of equitable estoppel may apply to bar a party from relying on a statute of limitations defense when the delay in initiating an action was induced by acts, representations, or conduct that would constitute a breach of good faith. *Nowell v. Tea Co.*, 250 N.C. 575, 579, 108 S.E.2d 889, 891 (1959). "There need not be actual fraud, bad faith, or an intent to mislead or deceive for the doctrine of equitable estoppel to apply." *Gore v. Myrtle/Mueller*, 362 N.C. 27, 33, 653 S.E.2d 400, 405 (2007). Rather, " '[i]t is the subsequent inconsistent position, and not the original conduct[,] that operates to the injury of the other party.' " *Hamilton v. Hamilton*, 296 N.C. 574, 576-77, 251 S.E.2d 441, 443 (1979) (quoting H. McClintock, *Equity* § 31 (2d ed. 1948)). The "basic question" in determining whether the doctrine of equitable estoppel operates to bar a defendant from relying on the statute of limitations as a defense is whether the "defendant's actions have lulled [the] plaintiff into a false sense of security and so induced [the plaintiff] not to institute

_____

2. To the extent that CCI failed to preserve its equitable estoppel argument for appellate review by not noticing an exception to the referee's determination that the doctrine did not preclude EDCI from asserting the defense, we exercise our discretion under Rule 2 of the Rules of Appellate Procedure in order to prevent manifest injustice to CCI and suspend the requirements of Rule 10(a). *See Potter v. Homestead Preservation Assn.*, 330 N.C. 569, 576, 412 S.E.2d 1, 5 (1992) (suspending appellate rules to consider plaintiff's dismissed claim where record reflected parties and trial court operated under "erroneous[] assum[ption]" regarding statute of limitations).

suit in the requisite time period." *Turning Point Indus. v. Global Furn., Inc.*, 183 N.C. App. 119, 125-26, 643 S.E.2d 664, 668 (citation and internal quotation marks ommitted), *disc. review denied*, 361 N.C. 575, 651 S.E.2d 563 (2007).

In this case, EDCI notified its subcontractors, including CCI, that it intended to submit a claim for additional compensation with UNCH and the State Construction Office. EDCI solicited claims from its subcontractors to be aggregated and passed through to UNCH for settlement. CCI submitted a verified claim on 28 March 2003, which included claims for extra/changed work, delay/disruption, and inefficiency damages. On 1 July 2003, EDCI submitted CCI's claim "in its entirety" to UNCH, and notified CCI on 12 August 2003 that its claim had been passed through to the State. While EDCI was pursuing the aggregated claim, EDCI sent a letter to CCI encouraging CCI not to file suit against EDCI in order to present a "unified front" to the State during the administrative process.

EDCI's affirmative representations that it was pursuing CCI's claims against the State and that initiating a lawsuit would jeopardize the "success[]" of recovery justifiably "lulled [CCI] into a false sense of security" and induced CCI's delaying filing, *Turning Point Indus.*, 183 N.C. App. at 125, 643 S.E.2d at 668 (citation and internal quotation marks omitted), as CCI reasonably believed that EDCI would pass through to CCI any proceeds attributable to its claim from EDCI's settlements. *See Duke Univ. v. Stainback*, 320 N.C. 337, 341, 357 S.E.2d 690, 693 (1987) ("Stainback is estopped to plead the statute of limitations as a defense. The factual findings indicate a course of conduct by Stainback, through his attorney, which misled Duke. The actions and statements of Stainback's attorney caused Duke to reasonably believe that it would receive its payment for services rendered once the case between Stainback and Investors was concluded, and such belief reasonably caused Duke to forego[] pursuing its legal remedy against Stainback. The actions and statements of Stainback lulled Duke into a false sense of security."). EDCI, moreover, acknowledges in its brief to this Court that through its settlement agreements with the project's designers, it "received . . . settlement monies" on CCI's claims. Having obtained, through third party settlements, funds derived from CCI's claims, EDCI is equitably estopped from asserting the statute of limitations as a defense to those claims. *See N.C. State Bar v. Gilbert*, 189 N.C. App. 320, 325, 663 S.E.2d 1, 4 (2008) (holding attorney was "equitably estopped from asserting the statute of limitations for conversion" where attorney

used clients' funds for personal expenses without clients' consent and could "not unjustly benefit from the [clients]' delayed discovery" of the conversion). EDCI's statute of limitations argument is overruled.

### B. Scope of Summary Judgment Order

[3] EDCI next contends that the referee exceeded the scope of Judge Gessner's summary judgment order by "permitt[ing] CCI to submit evidence and recover upon its claims for delay, disruption and inefficiency damages occurring prior to 21 June 2001." In his order granting partial summary judgment to EDCI, Judge Gessner ruled that: (1) "all claims which arose prior to August 20, 2000 have been waived and released by [CCI] and that [CCI] is not entitled to recover any sum for such claims"; and (2) "all claims arising after August 20, 2000 through and including June 20, 2001, which were not specifically reserved in [CCI]'s payment applications were waived and released by [CCI] and that [CCI] is not entitled to recover any sum for all such claims not specifically reserved in the payment applications."

Prior to this case being referred, the parties disputed the scope of Judge Gessner's 11 April 2007 summary judgment order—whether judgment was granted in favor of EDCI on just CCI's extra/changed work claims arising prior to 21 June 2001 (as argued by CCI), or whether judgment was entered on CCI's delay/disruption and inefficiency claims, as well as its extra/changed work claims, arising before 21 June 2001 (as advocated by EDCI). After conducting a hearing on a motion *in limine* filed by EDCI to exclude evidence of the challenged claims, Judge Hobgood entered an order labeled "Order Granting Defendant's Motion In Limine to Preclude Plaintiff from Presenting Any Evidence in Connection with Delay, Disruption, or Labor Inefficiency Damages," in which Judge Hobgood ruled:

> [CCI] shall not be allowed to submit any evidence related to delay, disruption, or labor inefficiency claims and/or damages against [EDCI]. . . . [I]t is not the intent of this Order to preclude [CCI] from presenting evidence of delay, disruption or lost efficiency claims, to the extent that [EDCI] did pass those claims through to third parties, and received payment thereon.

The order referring the case to the referee similarly directed the referee to "comply with the ruling of the Honorable Paul G. Gessner in his Order dated 11 April 2007 . . . ."

As reflected in his report, the referee determined that "Judge Gessner's order is ambiguous on the issue of whether the delay and

disruption claims are among the claims that are barred," considered "extrinsic evidence" in the form of an email sent by Judge Gessner to counsel informing them of his rulings on EDCI's motion for summary judgment, and concluded that the email "supports the view that these claims are not barred by the order." As a result, the referee permitted CCI to present evidence on its delay/disruption and inefficiency claims arising on or before 20 June 2001.

EDCI contends that the "unambiguous" and "unequivocal language" of Judge Gessner's order "barred CCI from being entitled to recover on any of its claims, including claims for delay, disruption or inefficiency damages allegedly incurred by CCI on the Project on or before 20 June 2001 . . . ." The interpretation of a court's judgment or order "presents a question of law," which is "fully reviewable on appeal." *Reavis v. Reavis*, 82 N.C. App. 77, 80, 345 S.E.2d 460, 462 (1986). Court judgments and orders "must be interpreted like other written documents, not by focusing on isolated parts, but as a whole." *Id.* As with other writings, such as statutes and contracts, where a judgment or order is unambiguous, the court is "limited to an interpretation in keeping with the express language of the document and without considering parol evidence." *Bicket v. McLean Securities, Inc.*, 124 N.C. App. 548, 564, 478 S.E.2d 518, 527(1996), *disc. review denied,* 346 N.C. 275, 487 S.E.2d 538 (1997); *see also Neujahr v. Neujahr,* 223 Neb. 722, 728, 393 N.W.2d 47, 51 (1986) (explaining that where decree is unambiguous, its meaning must be "determined from [its] four corners" and "neither what the parties thought the judge meant nor what the judge thought he or she meant . . . is of any relevance").

Here, Judge Gessner's order is unequivocal: it states that "all claims" not specifically reserved by CCI arising prior to 21 June 2001 are barred. Consistent with the order's plain language, we believe that "all claims" means precisely that: "all claims." *See Financial Servs. of Raleigh, Inc. v. Barefoot,* 163 N.C. App. 387, 395, 594 S.E.2d 37, 43 (2004) ("[W]hen the parties stated that they were releasing 'all claims of any kind,' we must construe the release to mean precisely that: an intent to release all claims of any kind in existence."). The referee, therefore, erred in considering extrinsic evidence regarding the scope of Judge Gessner's summary judgment order.

EDCI's argument, however, ignores Judge Hobgood's subsequent order in which he *grants* EDCI's motion *in limine,* clarifying that CCI would be permitted to present evidence regarding its delay/disruption and inefficiency claims to the extent that EDCI "pass[ed] th[e]se

claims through to third parties, and received payment thereon." On appeal, EDCI fails to identify and differentiate between those claims that, although initially barred, were properly submitted to the referee due to EDCI's recovering on them from third parties and those barred claims on which EDCI made no third-party recovery but on which CCI nevertheless presented evidence. Nor does EDCI specify which erroneously considered claims—if there are any—were awarded to CCI by the referee. EDCI, as the appellant on this issue, bears the burden of "not only . . . show[ing] error, but also . . . *enabl[ing] th[is] Court to see that [it] was prejudiced* and that a different result would have likely ensued had the error not occurred." *Hasty v. Turner*, 53 N.C. App. 746, 750, 281 S.E.2d 728, 730 (1981) (emphasis added). EDCI has failed to satisfy this burden on appeal.

### C. Prejudgment Interest

[4] EDCI next contends that Judge Hobgood erred in awarding CCI prejudgment interest on certain "disputed" breach of contract claims. In his report, the referee determined:

> 194. Prejudgment interest is not an entitlement. Even though the referee has found in favor of CCI on many claims, he has concluded that many of CCI's claims are not justified, and CCI itself reduced its claims over the extended life of this case significantly. EDCI had legitimate defenses and a legitimate basis to withhold most of the funds it withheld. Neither party is a "prevailing party" and the referee would not tax prejudgment interest as a cost except as stated below.

> 195. The referee believes that CCI's subcontract balance of $369,951, as computed by EDCI, was undisputed as of November 3, 2005. It should bear interest at the judgment rate from that date in the amount of $109,140.

CCI noticed an exception to this ruling by the referee and Judge Hobgood modified the report in his final judgment, "conclud[ing] that [CCI] is entitled to interest at the judgment rate on that portion of the net amount that was not 'undisputed,' from the date of the breach, November 3, 2005."

In breach of contract actions, N.C. Gen. Stat. § 24-5(a) (2009) "authorizes the award of pre-judgment interest on damages from the date of the breach at the contract rate, or the legal rate if the parties have not agreed upon an interest rate." *Members Interior Construction v. Leader Construction Co.*, 124 N.C. App. 121, 125, 476

CLEVELAND CONSTR., INC. v. ELLIS-DON CONSTR., INC.

[210 N.C. App. 522 (2011)]

S.E.2d 399, 402 (1996), *disc. review denied*, 345 N.C. 754, 485 S.E.2d 56 (1997). EDCI contends that Judge Hobgood erred in awarding pre-judgment interest on the "disputed" contract claims, relying on this Court's holing in *Lawrence v. Wetherington*, 108 N.C. App. 543, 550, 423 S.E.2d 829, 833 (1993) (citing *Rose v. Materials Co.*, 282 N.C. 643, 194 S.E.2d 521 (1973)), that "[a]s a general rule, in breach of contract cases, pre-judgment interest (from the date of breach) may be allowed only where the amount of the claim is obvious or ascertainable from the contract itself." Because, EDCI argues, the amounts involved in the "disputed" claims "were not ascertainable solely from the terms of the contract[,]" Judge Hobgood should not have awarded prejudgment interest on these claims.

The *Lawrence* Court, in stating its "rule," relied upon the Supreme Court's holding in *Rose*, 282 N.C. at 671, 194 S.E.2d at 540 (quoting *General Metals v. Manufacturing Co.*, 259 N.C. 709, 713, 131 S.E.2d 360, 363 (1963)): " 'When the amount of damages in a breach of contract action is ascertained from the contract itself, or from relevant evidence, or from both, interest should be allowed from the date of the breach.' " This Court has explained, however, that the rule set out in *General Metals* was superseded by the General Assembly's amendment to N.C. Gen. Stat. § 24-5(a) in 1985:

> Prior to its amendment in 1985, G.S. § 24-5(a) provided that '[a]ll sums of money due by contract of any kind . . . shall bear interest.' The statute did not address the date from which the courts were to apply interest. To fill this void, our appellate courts developed the rule that '[w]hen the amount of damages in a breach of contract action is ascertained from the contract itself, or from relevant evidence, or from both, interest should be allowed from the date of breach.' *General Metals v. Truitt Manufacturing Co.*, 259 N.C. 709, 713, 131 S.E.2d 360, 363 (1963)[.] . . .

> The legislature amended G.S. § 24-5(a) in 1985 to provide that '[i]n an action for breach of contract, . . . the amount awarded on the contract bears interest from the date of breach.' Subsequently, in *Steelcase, Incorporated v. The Lilly Company*, this Court noted that, as amended, G.S. § 24-5(a) 'clearly provides for interest from the date of breach in breach of contract actions.' *Steelcase, Inc. v. The Lilly Co.*, 93 N.C. App. 697, 703, 379 S.E.2d 40, 44, *disc. review denied*, 325 N.C. 276, 384 S.E.2d 530 (1989).

> Here, both parties tailor their arguments to the case law developed prior to the 1985 amendment and the rule quoted from

*General Metals.* However, it is clear to this Court that resort to that rule, *developed only to determine the date from which to apply interest,* is no longer necessary. When the legislature amended the statute, and provided a time from which to apply interest, it obviated any need for the rule. In doing so, it removed the confusing questions of ascertainment and certainty that so often muddled the statute's application.

*Metromont Materials Corp. v. R.B.R. & S.T.,* 120 N.C. App. 616, 617-18, 463 S.E.2d 305, 306-07 (1995) (internal citation omitted) (emphasis added), *disc. review denied,* 342 N.C. 895, 467 S.E.2d 903 (1996).

After the 1985 amendment to N.C. Gen. Stat. § 24-5(a), "[o]nce the relevant facts have been established entitling the party to damages, interest is awarded as a matter of law." *Metromont,* 120 N.C. App. at 618, 463 S.E.2d at 307; *accord Cap Care Grp., Inc. v. McDonald,* 149 N.C. App. 817, 824, 561 S.E.2d 578, 583 ("Once breach is established, plaintiffs are entitled to interest from the date of the breach as a matter of law."), *disc. review denied,* 356 N.C. 611, 574 S.E.2d 676 (2002).

Here, the referee found that EDCI breached the subcontract with CCI on 3 November 2005 when EDCI notified CCI by letter that it would not pass through to CCI any funds EDCI had recovered through its settlement agreement with UNCH. In a footnote in its brief, EDCI asserts that this date is "incorrect" as EDCI did "not receive[] any settlement monies on [these] claims until" it settled with HKS and SSR on 21 December 2005 and CRZ on 11 January 2007. EDCI, however, did not notice an exception to the referee's finding that the breach occurred on 3 November 2005 and raised the issue for the first time in its motion to amend the final judgment. A motion to amend judgment, however, "cannot be used as a means to reargue matters already argued or to put forth arguments which were not made but could have been made" at the trial court level. *Smith v. Johnson,* 125 N.C. App. 603, 606, 481 S.E.2d 415, 417 (1997). By failing to contest the referee's finding regarding the date of breach, EDCI waived review of that determination by the trial court and this Court. *See State ex rel. Gilchrist v. Cogdill,* 74 N.C. App. 133, 136, 327 S.E.2d 647, 649 (1985) ("In the absence of exceptions to the factual findings of the referee, the findings are conclusive . . . .").

EDCI also contends that the award of prejudgment interest was erroneous because it had legitimate defenses and justifiable grounds to withhold most of the funds that it withheld during this lawsuit. This contention also has been rejected by this Court: "We are

unaware of any appellate interpretation which holds that N.C. Gen. Stat. § 24-5(a) has a 'good faith' exception. Indeed, the plain language of the statute indicates otherwise." *Salvaggio v. New Breed Transfer Corp.*, 150 N.C. App. 688, 692, 564 S.E.2d 641, 644 (2002). EDCI's arguments regarding prejudgment interest are overruled.

### D. Delay Damages

[5] With respect to its own claims presented to the referee, EDCI contends that Judge Hobgood erred in overruling its exception to the referee's determination that EDCI was not entitled to recover delay damages from CCI for a 12.5 week delay at the end of the project. In his report, the referee found that as the project expeditor, "EDCI was significantly delayed and disrupted by causes attributable to the owner and the designers . . . ." For roughly 12.5 weeks during the delay (25 September 2001 through 21 December 2001), "CCI's work relating to fire rated walls and vapor barrier installation" concurrently delayed completion of the project. After the project was complete, EDCI submitted to the owner and project designers verified claims, including a claim for delay damages stemming from the September-December 2001 period. During the settlement negotiations, "the owner and designers cited issues attributable to CCI in contesting EDCI's delay and disruption claims[,]" which ultimately "contributed to [EDCI's] decision to compromise its claims" against the owner and designers.

As part of the proceedings before the referee, EDCI submitted a backcharge for "delay damages against CCI for 116 days associated with the fire rated wall issues." The referee determined that the 12.5 week delay was "a CCI-caused critical path delay that [wa]s concurrent with owner-caused delays[.]" Concluding that "this was a concurrent delay," the referee denied EDCI's claim for damages.

EDCI argues on appeal, as it did before the trial court, that the referee incorrectly "appl[ied] the theory of 'concurrent delay' to deprive [EDCI] of its rightful damages from and against CCI based on the delays that CCI caused concurrently with [UNCH]." EDCI's damages theory is premised on its assertion that "[EDCI] would have recovered from UNCH and HKS for owner and architect-caused delays between September and December of 2001, *but for* CCI's defective construction of the fire-rated walls which concurrently delayed the Project during this same period of time." Under the construction law principle of "concurrent delay," where two or more parties proximately contribute to the delay of the completion of the

project, none of the parties may recover damages from the other delaying parties, "unless there is proof of clear apportionment of the delay and expense attributable to each party." *Biemann & Rowell Co. v. Donohoe Cos.*, 147 N.C. App. 239, 245, 556 S.E.2d 1, 5 (2001) (citing *Blinderman Const. Co., Inc. v. United States*, 695 F.2d 552, 559 (Fed. Cir. 1982)).

Applied here, the principle of concurrent delay only precludes CCI, UNCH, and HKS from recovering delay damages from each other (in the absence of proof of apportionment); it does not, however, operate to bar EDCI's delay claim against CCI, since EDCI was—as the referee found—not responsible for any portion of the delay. Judge Hobgood, therefore, erred in overruling EDCI's exception to the referee's conclusion that the principle of concurrent delay operated to bar EDCI's delay damages claim against CCI. EDCI, however, as the appellant, "must not only show error, but also that the error is material and prejudicial, amounting to a denial of a substantial right and that a different result would have likely ensued." *Cook v. Southern Bonded, Inc.*, 82 N.C. App. 277, 281, 346 S.E.2d 168, 171 (1986).

As CCI points out, the referee found—and EDCI does not dispute—that EDCI recovered in its settlements with the project designers some amounts "necess[arily] . . . attributable" to its delay claim. In fact, in a footnote in its brief, EDCI admits that it recovered some amount of money from HKS, SSR, and CRZ on its claim. On appeal, EDCI fails to point to any evidence it presented as to how much it recovered from the designers on its delay claim. Without any evidence identifying the amount EDCI recovered from the designers, it is impossible to determine how much, if any, EDCI is entitled to recoup from CCI without obtaining a double recovery. *See Markham v. Nationwide Mut. Fire Ins. Co.*, 125 N.C. App. 443, 455, 481 S.E.2d 349, 357 (1997) ("Simply put, although plaintiff is entitled to full recovery for its damages, plaintiff is nevertheless not entitled to 'double recovery' for the same loss or injury." (internal citations omitted)).

EDCI nonetheless argues that "[w]hile the concurrent delay caused by CCI precluded [EDCI] from collecting its delay claims from the Owner and Architect, it should not . . . prevent [EDCI] from recover[ing] . . . those damages directly from the party who actually caused the concurrency—namely, CCI." EDCI, however, fails to cite any authority—and we have found none—supporting the proposition that CCI is fully liable for EDCI's delay damages despite being only partially responsible for the delay. EDCI mischaracterizes its injury

as being the "concurrency" of the delay rather than as the net effect of the delay itself. This argument is overruled.

### E. Recovery Costs

**[6]** CCI also appeals from the final judgment, contending that Judge Hobgood erred in overruling its exception to the referee's requiring CCI to "share" the costs EDCI incurred in pursuing CCI's delay and disruption claims against the owner and designers of the project:

> CCI should . . . share in the costs of pursuing the claim[s]. But for EDCI's pursuit of the claims, CCI would have recovered nothing on them. Indeed, CCI's claim[s] . . . against the designers were likely time-barred. EDCI's fees represented 16% of its total recovery. CCI's recovery on th[ese] claim[s] must be reduced by 16%, or $165,933, representing a portion of the fees incurred by EDCI i[n] pursuing the claim[s]. Accordingly, CCI's total recover on these claims is $871,150.

CCI, relying on the subcontract's integration clause, contends that because the subcontract does not include any express provision for the "sharing" of costs in pursuing claims against third parties, "the Referee should not have reduced CCI's recovery for delay and disruption for 'costs' incurred by [EDCI]." Indeed, the referee noted in several places in his report that CCI had "entered into no agreement with EDCI relating to the sharing of the costs . . . of EDCI's claims."

EDCI, acknowledging that there is no explicit contractual provision providing for the sharing of recovery costs, relies on the "doctrine of implication of unexpressed terms," which provides that a contract "encompasses not only its express provisions but also all such implied provisions as are necessary to effect the intention of the parties unless express terms prevent such inclusion." *Lane v. Scarborough*, 284 N.C. 407, 410, 200 S.E.2d 622, 624 (1973) (citing 4 Williston, *Contracts* § 601B (3d ed. 1961)). The *Lane* Court elaborated on the doctrine, stating:

> "If it can be plainly seen from all the provisions of the instrument taken together that the obligation in question was within the contemplation of the parties when making their contract or is necessary to carry their intention into effect, the law will imply the obligation and enforce it. The policy of the law is to supply in contracts what is presumed to have been inadvertently omitted or to have been deemed perfectly obvious by the parties, the parties

being supposed to have made those stipulations which as honest, fair, and just men they ought to have made."

*Id.* at 410-11, 200 S.E.2d at 625 (quoting 17 Am. Jur. 2d *Contracts* § 255 (1964)).

EDCI argues that a "sharing" provision should be incorporated into the subcontract by implication because it is "standard construction industry practice" that the costs incurred by a general contractor in pursuing third party claims that·ultimately benefit a subcontractor are passed through to the subcontractor. EDCI maintains that, "as sophisticated parties well-versed in standard construction practice," EDCI and CCI must have been "aware" at the time of executing the subcontract that any such recovery costs would be passed through to CCI. It is well established that "a lawful and existent business custom or usage, *clearly established,* concerning the subject-matter of a contract, *may be received in evidence* to explain ambiguities therein, or to add stipulations about which the contract is silent . . . ." *Cohoon v. Harrell,* 180 N.C. 39, 41, 103 S.E. 906, 906 (1920) (emphasis added). Where the "custom is known to the parties, or its existence is so universal and all-prevailing that knowledge will be imputed, the parties will be presumed to have contracted in reference to it, unless excluded by the express terms of the agreement between them." *Id.*

As CCI points out, EDCI did not present any evidence in the numerous hearings before the referee regarding any construction industry custom regarding the "sharing" of recovery costs or CCI's actual or constructive knowledge of the purported custom. EDCI, apparently recognizing the lack of evidence on the issue, asserts that the referee, who was selected based on his "expertise in public construction law and accounting," was "well within his authority to conclude that the costs incurred by [EDCI] in prosecuting its claim should have been shared by CCI in accordance with accepted industry custom and practice." While EDCI is correct that "[l]ong-established customs and usages are to be judicially recognized as part of the law[,]" *Hamilton v. R. R.,* 200 N.C. 543, 557, 158 S.E. 75, 83 (1931), where, as here, "no evidence [i]s introduced as to usage or custom" and the fact-finder "did not, nor was it requested to, take judicial notice of any [custom or] usage," reliance on the doctrine of custom and usage is "not appropriate." *Peterson v. McCarney,* 254 N.W.2d 438, 444 (N.D. 1977); *see also Katz v. Brooks,* 65 Ill. App. 2d 155, 160, 212 N.E.2d 508, 511 (1965) ("The existence of the custom or usage must be proved as any other matter of fact and the burden is on the

**CLEVELAND CONSTR., INC. v. ELLIS-DON CONSTR., INC.**

[210 N.C. App. 522 (2011)]

party asserting it." (internal citation omitted)); *Clark Adver. Agency, Inc. v. Avco Broad. Corp.*, 178 Ind. App. 451, 455, 383 N.E.2d 353, 355 (1978) ("Of course, he who would avail himself of a custom or usage has the burden to establish its existence." (citation and internal quotation marks omitted)).

Here, there is simply no evidence in the record regarding (1) the existence of a customary practice in the construction industry concerning the sharing of recovery costs or (2) CCI's actual or constructive knowledge of such a custom. The referee did not take judicial notice of any custom; nor did EDCI request that he take judicial notice of the custom. The referee, moreover, failed to make any findings on these issues—he simply concluded, without any explanation of his rationale, that CCI should "share" in the costs. Without having taken judicial notice of the custom or having received any evidence on the practice, the referee's determination lacks the necessary support to be upheld on appeal under our standard of review. *Compare Crown Co. v. Jones*, 196 N.C. 208, 211, 145 S.E. 5, 6 (1928) ("As the record discloses that there was evidence to be considered by the referee of a verbal agreement and of a general custom of the trade, his findings of fact, having been approved by the trial judge, determine the controversy."). The trial court, therefore, erred in overruling CCI's exception.

EDCI alternatively argues that if we "do[] not affirm the trial court's adoption of the Referee's finding to imply the existence of a term requiring [recovery] costs to be proportionally paid by CCI," we should remand the case to the trial court for the parties to present evidence on the existence and extent of any customary practices in the construction industry concerning the sharing of recovery costs. EDCI, however, fails to cite any authority in support of the proposition that a party is entitled to remand on an issue on which that party bore the burden of proof at trial and where that party elected not to present any evidence on the issue.

## Conclusion

In sum, we conclude that Judge Gessner properly granted partial summary judgment on CCI's extra/changed work, delay/disruption, and inefficiency claims. With respect to EDCI's appeal from Judge Hobgood's final judgment entered on the referee's report, we conclude that EDCI is equitably estopped from asserting the statute of limitations as a defense to those claims it "passed through" to third parties for settlement. With respect to CCI's production of evidence

on its delay/disruption and inefficiency claims, EDCI has failed to demonstrate prejudice. As for EDCI's arguments concerning the imposition of prejudgment interest, Judge Hobgood correctly modified the referee's report to include the interest. EDCI has failed to demonstrate prejudice resulting from Judge Hobgood's denial of its claim for concurrent delay damages. With respect to CCI's appeal from final judgment, we conclude that the referee's determination that CCI is required to proportionally share EDCI's recovery costs is not supported by the evidence or the referee's findings. Accordingly, the final judgment is affirmed in part and reversed in part.

Affirmed in part; reversed in part.

Judges CALABRIA and ELMORE concur.