STROUD, Judge.
 

 *866
 

 *456
 
 Defendant Kevin Jonathan Mitchell ("defendant") appeals from his convictions of felonious stalking, felonious obstruction of justice, and felonious attempted obstruction of justice. On appeal, defendant argues that the trial court erred by finding that the "Conditions of Release and
 
 *867
 
 Release Order" were in effect while defendant was in custody of the Wake County Detention Center and denying his motion to dismiss the felony stalking charge. He further argues that the court erred by denying his motion to dismiss the felony obstruction of justice charges. For reasons stated below, we find no error with the trial court's judgment.
 

 Background
 

 The State's evidence at trial showed these facts. On 26 December 2014, defendant was in a romantic relationship and living with Nancy
 
 [1]
 
 and her four children. Defendant is the father of Nancy's youngest son. That evening, Nancy's daughters used her cell phone to text their father. The girls gave the phone back to their mother, and Nancy walked to the bedroom to read the texts. Defendant then entered the room, snatched the phone from Nancy's hand, read the text, and jumped on her. He choked Nancy and pushed her down on the bed. Nancy took the phone back from defendant, and then he asked her for keys to the house. While Nancy was looking for her set of keys, defendant sucker punched her in the face. Defendant left and Nancy called the police, who took photographs of Nancy's injuries and eventually spotted defendant walking down the road nearby. Defendant was arrested for assault on a female
 
 [2]
 
 and taken to the Wake County Detention Center.
 

 On 26 December 2014, after defendant was arrested, a magistrate judge entered an order entitled "Conditions of Release and Release Order" (AOC-CR-200, Rev. 12/12) ("Order 1"), which denied bond and placed defendant on a 48-hour domestic violence hold.
 
 [3]
 
 In the top portion of the form, the preprinted language states:
 

 To The Defendant Named Above, you are ORDERED to appear before the Court as provided above and at all
 
 *868
 
 subsequent continued dates. If you fail to appear, you will be arrested and you may be charged with the crime of willful failure to appear. You also may be arrested without a warrant if you violate any condition of release in this Order or in any document incorporated by reference."
 

 Just below this statement, the following statement was typed into a blank area of the form: "NOT TO HAVE ANY CONTACT WITH [NANCY]." Below this, the magistrate checked the box with this language: "Your release is not authorized."
 

 The lower section of the form is entitled: "ORDER OF COMMITMENT." This portion
 
 *457
 
 of the form directed the Wake County Detention Center to hold defendant "for the following purpose: DV HOLD." It also stated that defendant was to be produced "at the first session of District or Superior Court held in this county after entry of this Order or, if no session is held before" 28 December 2014, then he must be brought before a magistrate "at that time to determine conditions of pretrial release."
 

 The back of the Order has four sections which are filled in by either a Judicial Official or Jailer for each court appearance of the defendant. The four sections, from top to bottom, are:
 

 CONDITIONS OF RELEASE MODIFICATIONS SUPPLEMENTAL ORDERS FOR COMMITMENT DEFENDANT RECEIVED BY DETENTION FACILITY DEFENDANT RELEASED FOR COURT APPEARANCE
 

 The first handwritten notes by the judge under "CONDITIONS OF RELEASE MODIFICATIONS" state that defendant's conditions of release were modified on 28 December 2014 to an $8,000.00 secured bond and "NCWV," an acronym for "no contact with victim." The next modification was on 29 December 2014, when the secured bond was increased to $10,000.00 and "no contact with victim."
 
 [4]
 

 Nancy filed a complaint for a Domestic Violence Protective Order under N.C. General Statutes Chapter 50B against defendant alleging he had committed acts of domestic violence against her, and an ex parte domestic violence protective order ("ex parte DVPO") was issued on 29
 
 *869
 
 December 2014, effective until a hearing scheduled on 5 January 2015. Defendant was served with the ex parte DVPO in jail. Nancy did not appear at the 5 January 2015 hearing, so the complaint was dismissed and the ex parte order expired on that date.
 

 On 7 January 2015, a warrant was issued for defendant's arrest for habitual misdemeanor assault in File No. 15 CRS 200503 and another order entitled "Conditions of Release and Release Order" ("Order 2") was entered on the same AOC form as Order 1. In Order 2, defendant's release was authorized upon execution of a secured bond in the amount of $20,000.00. Order 2 includes the exact same provision of "NOT TO HAVE ANY CONTACT WITH [NANCY]" as Order 1. He was also required to provide fingerprints. In the portion of the form entitled "Additional Information" was "Bond doubled pursuant to statute. Defendant has a $10,000.00 bond for 14CR229975." The Order of Commitment portion of the form directed that if defendant was not presented before a district or superior court judge by 9 January 2015, he must be brought before a magistrate "at that time to determine conditions of pretrial release." On the back of Order 2, in "Conditions of Release Modifications," defendant's conditions of release were modified on 8 January 2015 to a $40,000.00 secured bond and no contact with victim.
 

 On 29 January 2015, the assault on a female charge in File No. 14 CR 229965 was apparently dismissed, so Order 1 was no longer in effect
 
 [5]
 
 . Nancy received six letters from defendant between 2 January 2015 and 23 February 2015. The first letters were cordial but escalated to threats when she did not respond or reply. Nancy testified at trial that the letters led her to file for a second domestic violence protective order against defendant, although there is no Chapter 50B order other than the one issued on 29 December 2014 in the record on appeal. Nancy also received an envelope marked "Return to Sender. Not Deliverable as Addressed. Unable to Forward" addressed to the Federal Building on Fayetteville Street in Raleigh with her address as the return address. Nancy
 
 *458
 
 testified that she did not write this letter or know anything about it before it arrived at her house. The letter contained a bomb threat and demand for one million dollars, purportedly made by Nancy. Defendant was later questioned and eventually admitted to writing the letter and confirmed to investigators there was no bomb in the building. Defendant
 
 *870
 
 was indicted for assault on a female and habitual misdemeanor assault on 23 February 2015 in Wake County File No. 15 CRS 200503.
 

 Another letter purportedly written by Nancy was delivered to the Wake County District Attorney's Office on 25 March 2015. An investigator in the office was told the letter had been sent by way of "jail mail," which means that it was sent by an inmate from the Wake County Detention Center. This letter stated that Nancy had made false allegations of assault against defendant and made demands and threats of committing a crime or terrorist attack if those demands were not met. Investigators spoke with Nancy about the letter, and she denied writing or sending it. Defendant was charged with felony stalking while a court order is in effect based upon the letters to Nancy and two counts of felony obstruction of justice based upon the letters to the Federal Building and the District Attorney's office.
 

 A jury trial was held on these charges on 11 January 2016 in Wake County Superior Court. At the close of all the evidence but before the case went to the jury, the trial court granted defendant's motion to dismiss the original obstruction of justice charge in 15 CRS 5832 regarding the Federal Building bomb threat, since the evidence showed the letter was not addressed properly, so the offense was never completed. Instead, the trial court allowed the lesser included offense of attempted obstruction of justice to be submitted to the jury in its place. The jury found defendant guilty of assault on a female, felonious stalking, felonious obstruction of justice, and felonious attempted obstruction of justice. Defendant admitted to his status as a habitual felon. The trial court entered judgment on or about 13 January 2016 and an amended judgment on or about 15 January 2016. Defendant timely appealed to this Court.
 

 Analysis
 

 I. Motion to Dismiss Felony Stalking While Court Order in Effect Charge
 

 Defendant's first argument on appeal is that the trial court erred in denying defendant's motion to dismiss the felony stalking charge by finding Orders 1 and 2 were in effect while defendant was in custody. The trial court concluded that when defendant sent the letters, he was subject to three orders: (1) Order 1; (2) Nancy's first ex parte DVPO; and (3) Order 2. Defendant argues that conditions of release stated in Orders 1 and 2 do not apply
 
 until
 
 the person has been released from custody, and since defendant was in jail when he wrote the letters, the orders did not apply.
 

 *871
 
 As the issue is whether the trial court reached a proper conclusion of law, we review
 
 de novo
 
 .
 
 See, e.g.,
 

 State v. Barnhill
 
 ,
 
 166 N.C. App. 228
 
 , 230-31,
 
 601 S.E.2d 215
 
 , 217 (2004) ("Although the trial court's findings of fact are generally deemed conclusive when supported by competent evidence, a trial court's conclusions of law ... [are] reviewable
 
 de novo
 
 .... [T]he trial court's conclusions of law must be legally correct, reflecting a correct application of applicable legal principles to the facts found." (Citations and quotation marks omitted) ).
 

 Defendant was charged with felonious stalking under subsection (d) of
 
 N.C. Gen. Stat. § 14-277
 
 .3A (2017): "A defendant who commits the offense of stalking when
 
 there is a court order in effect prohibiting the conduct
 
 described under this section by the defendant against the victim is guilty of a Class H felony."
 
 N.C. Gen. Stat. § 14-277
 
 .3A(d) (emphasis added). The offense of stalking is defined by
 
 N.C. Gen. Stat. § 14-277
 
 .3A(c) :
 

 A defendant is guilty of stalking if the defendant willfully on more than one occasion harasses another person without legal purpose or willfully engages in a course of conduct directed at a specific person without legal purpose and the defendant knows or should know that the harassment or the course of conduct would cause a reasonable person to do any of the following:
 

 *459
 
 (1) Fear for the person's safety or the safety of the person's immediate family or close personal associates.
 

 (2) Suffer substantial emotional distress by placing that person in fear of death, bodily injury, or continued harassment.
 

 Defendant does not argue the trial court should have dismissed the charge of stalking under
 
 N.C. Gen. Stat. § 14-277
 
 .3A(c), which is a Class A1 misdemeanor. Defendant challenges only the elevation of the charge to a Class H felony based upon the existence of a "court order in effect prohibiting the conduct described."
 
 N.C. Gen. Stat. § 14-277
 
 .3A(d).
 

 Under N.C. Gen. Stat. § 15A-534(a) (2017), a judicial official may place various restrictions on a defendant as "conditions of pretrial release[,]" including "restrictions on the travel, associations,
 
 conduct
 
 , or place of abode of the defendant[.]" (Emphasis added). And under N.C. Gen. Stat. § 15A-534.1, additional conditions may be placed on a defendant charged with various crimes of domestic violence. On appeal, defendant argues that he was not subject to the conditions of pretrial release in Orders 1 and 2 because he never posted his bond and
 
 *872
 
 instead remained in jail during the entire time period when the letters were sent. He argues he was not "released" so a "condition of release" could not apply to him.
 

 Defendant's argument is deceptively simple and focused on the title of the Orders and on the word "release," while ignoring the substance of the detailed provisions of the Orders. Although Orders 1 and 2 are each titled as "Conditions of Release and Release Order," we look to the entirety of an order when interpreting it and focus on the content, rather than the title, of the order.
 
 See, e.g.
 
 ,
 
 Cleveland
 

 Constr., Inc. v. Ellis-Don Constr. Inc.
 
 ,
 
 210 N.C. App. 522
 
 , 535,
 
 709 S.E.2d 512
 
 , 522 (2011) ("Court judgments and orders must be interpreted like other written documents, not by focusing on isolated parts, but as a whole." (Citation and quotation marks omitted) );
 
 McNair v. Goodwin
 
 ,
 
 262 N.C. 1
 
 , 5,
 
 136 S.E.2d 218
 
 , 221 (1964) ("The effect of an order or judgment is not determined by its recitals, but by what may or must be done pursuant thereto.").
 

 The trial court's form orders in this case, despite the title, contain much more than just conditions of release. Under the title of the form is a reference to two articles of Chapter 15A of the North Carolina General Statutes: Article 25, which deals with pretrial commitment to a detention facility, and Article 26, which contains provisions related to bail and pretrial release. The top portion of the form includes provisions based upon Article 25, and the bottom portion of the form, entitled "Order of Commitment," includes provisions based upon Article 26.
 

 Under N.C. Gen. Stat. § 15A-521(a) (2017):
 

 Every person charged with a crime and held in custody who has not been released pursuant to Article 26 of this Chapter, Bail, must be committed by a written order of the judicial official who conducted the initial appearance as provided in Article 24 to an appropriate detention facility as provided in this section.
 

 Section (b) describes what must be in the order of commitment:
 

 (b) Order of Commitment; Modification.-The order of commitment must:
 

 (1) State the name of the person charged or identify him if his name cannot be ascertained.
 

 (2) Specify the offense charged.
 

 (3) Designate the place of confinement.
 

 (4) If release is authorized pursuant to Article 26 of this Chapter, Bail, state the conditions of release. If a separate
 
 *873
 
 order stating the conditions has been entered, the commitment may make reference to that order, a copy of which must be attached to the commitment.
 

 (5) Subject to the provisions of subdivision (4), direct, as appropriate, that the defendant be:
 

 a. Produced before a district court judge pursuant to under Article 29 of this Chapter, First Appearance before District Court Judge,
 

 b. Produced before a district court judge for a probable cause hearing as provided in Article 30 of this Chapter, Probable-Cause Hearing,
 

 c. Produced for trial in the district or superior court, or
 
 *460
 
 d. Held for other specified purposes.
 

 (6) State the name and office of the judicial official making the order and be signed by him.
 

 N.C. Gen. Stat. § 15A-521(b).
 

 "Form AOC-CR-200, Rev. 12/12," the form order the trial court used for Orders 1 and 2, is a comprehensive order which includes both conditions of release and commitment. This order can be modified but remains in effect from the time a defendant is arrested until the charges upon which the order is based are dismissed or the defendant is convicted of the crime.
 
 See generally
 
 N.C. Gen. Stat. §§ 15A-521 ; 15A-534. Upon conviction, the trial court would enter a judgment or other disposition as appropriate under N.C. General Statutes Chapter 15A, Subchapter XIII. But the order remains
 
 in effect
 
 during the entire prosecution. At each step of the process, this order memorializes the trial court's determinations governing the defendant, whether the defendant is held in a detention facility or released.
 

 Some of the terms of the order would apply whether the defendant is committed or released, while others would apply only in one circumstance or the other. For example, if a defendant posts the bond set for his release, he is released. If he does not post the bond, he is not released, but the order remains
 
 in effect
 
 . Some preprinted options of the order are procedural facts that could apply in a particular case and are not pretrial release conditions, although they are relevant to the types of conditions which may be placed upon a defendant. Here, the trial court's typed addition "NOT TO HAVE ANY CONTACT WITH [NANCY]" contains no additional language to indicate this provision would only apply after defendant had met conditions of release and was released. But the order remains
 
 in effect
 
 until the charges are disposed of, whether the defendant is committed or released.
 

 *874
 
 Order 1 was "in effect" as of 26 December 2014 until 29 January 2015, when the assault on a female charges in File No. 14 CR 229975 were apparently dismissed. On 26 December 2014, the magistrate added a provision to Order 1 stating "NOT TO HAVE ANY CONTACT WITH [NANCY]." This provision had no conditions or limitations; none of the preprinted provisions on the form above this addition were checked and they did not apply to defendant. Below the added provisions, the magistrate checked the box indicating "[y]our release is not authorized" and ordered the Wake County Detention Center to hold defendant for a "DV hold," or domestic violence hold under N.C. Gen. Stat. § 15A-534.1(b).
 

 Order 1 was modified several times by the trial court, as indicated by the handwritten notations on the back. On 28 December 2014, defendant's bond was set at $8,000.00 secured and on 29 December 2014, it was increased to $10,000.00, but both modifications included "NCWV." Thus, the "CONDITION OF RELEASE MODIFICATIONS" were the setting of the bond and increase of the bond; there was no modification to the no-contact provision originally stated on the front of the form, since the trial court noted "NCWV" on the reverse side of the order to show that this original provision remained in effect. As explained above, the charges for which this Order was entered were apparently dismissed on 29 January 2015, so Order 1 ceased to be "in effect" on that date.
 

 Order 2 was based upon charges of habitual misdemeanor assault in File No. 15 CR 200503. It was entered by the magistrate judge on 7 January 2015. Order 2 includes the exact same provision of "NOT TO HAVE ANY CONTACT WITH [NANCY]" as Order 1, in the same place on the form and not subject to any other conditions. On Order 2, defendant was also required to provide fingerprints. In the portion of the form entitled "Additional Information" the court entered: "Bond doubled pursuant to statute. Defendant has a $10,000.00 bond for 14CR229975." The Order of Commitment portion of the form directed that if defendant was not presented before a district or superior court judge by 9 January 2015, he must be brought before a magistrate "at that time to determine conditions of pretrial release." Order 2 remained in effect until 13 January 2016, when the charge of habitual misdemeanor assault was "consolidated with 15 CRS 4737," the habitual felon charges.
 

 *461
 
 Therefore, either Order 1, Order 2, or both were "in effect" from 26 December 2014 until 13 January 2016.
 
 [6]
 
 Defendant sent the first letter
 
 *875
 
 to Nancy on 2 January 2015 and the last letters were sent on 23 February 2015, so all the letters to Nancy were sent when an order was "in effect."
 
 N.C. Gen. Stat. § 14-277
 
 .3A(d). We must now determine whether the orders also "prohibit[ed] the conduct described under this section by the defendant against the victim[.]"
 
 Id
 
 .
 

 The "conduct described under this section" in
 
 N.C. Gen. Stat. § 14-277
 
 .3A(d) includes "harassment" and the definition of harassment includes contacting a person in any manner "including written or printed communication or transmission, telephone, cellular, or other wireless telephonic communication, facsimile transmission, pager messages or transmissions, answering machine or voice mail messages or transmissions, and electronic mail messages or other computerized or electronic transmissions...."
 
 N.C. Gen. Stat. § 14-277
 
 .3A(b)(2). Defendant was ordered not to contact Nancy, and "contact," including written contact by a letter, is "conduct described under this section."
 
 N.C. Gen. Stat. § 14-277
 
 .3A(d).
 

 In addition, defendant's argument focusing on just the word "release" in Orders 1 and 2 is not consistent with the specific terms or legislative intent of the stalking offense punishable under
 
 N.C. Gen. Stat. § 14-277
 
 .3A. We interpret the prohibition on "contact" with Nancy in Orders 1 and 2 in a manner in keeping with the intent of
 
 N.C. Gen. Stat. § 14-277
 
 .3A, which is set forth within the statute:
 

 a) Legislative Intent.-The General Assembly finds that stalking is a serious problem in this State and nationwide. Stalking involves severe intrusions on the victim's personal privacy and autonomy. It is a crime that causes a long-lasting impact on the victim's quality of life and creates risks to the security and safety of the victim and others, even in the absence of express threats of physical harm. Stalking conduct often becomes increasingly violent over time.
 

 The General Assembly recognizes the dangerous nature of stalking as well as the strong connections between stalking and domestic violence and between stalking and sexual assault.
 
 Therefore, the General Assembly enacts this law to encourage effective intervention by the criminal justice system before stalking escalates into behavior that has serious or lethal consequences. The General Assembly intends to enact a stalking statute that permits the criminal justice system to hold stalkers accountable for a wide range of acts,
 

 *876
 

 communications, and conduct.
 
 The General Assembly recognizes that stalking includes, but is not limited to, a pattern of following, observing, or monitoring the victim, or committing violent or intimidating acts against the victim, regardless of the means.
 

 N.C. Gen. Stat. § 14-277
 
 .3A(a) (emphasis added).
 

 Both orders stated "NOT TO HAVE ANY CONTACT WITH [NANCY]." Defendant does not argue that the threatening letters to Nancy do not fall under the type of communication prohibited by
 
 N.C. Gen. Stat. § 14-277
 
 .3A ; he argues only that the requirement that he was "NOT TO HAVE ANY CONTACT WITH [NANCY]" did not apply to him while he was in detention. As discussed above, the requirement as stated on Order 1 and Order 2 was an independent provision prohibiting certain conduct: contacting Nancy. By its terms, the prohibition was not conditioned on defendant's release or commitment but was required as long as the Order was in effect. We hold that the trial court did not err in denying defendant's motion to dismiss the felony stalking charge.
 

 II. Motion to Dismiss Felony Obstruction of Justice Charges
 

 Defendant's second and final argument on appeal is that the trial court erred by denying his motion to dismiss the felony
 
 *462
 
 obstruction of justice charges because the crimes can be committed without deceit and intent to defraud. Defendant claims that the trial court concluded that deceit and intent to defraud are not necessary and inherent elements of obstruction of justice.
 

 The indictment in 15 CRS 4737 alleged that defendant
 

 unlawfully, willfully and feloniously obstructed justice with deceit and intent to defraud by intentionally giving false information to the District Attorney's Office by writing a letter purporting to be from the victim in Wake County case 15 CRS 200503 recanting her earlier statements, implicating the charging officer in highly unethical and illegal behavior, and threatening to place explosives in the Wake County Courthouse. This act was done in violation of the common law of North Carolina and against the peace and dignity of the State.
 

 Similarly, the indictment in 15 CRS 5832 alleged defendant
 

 unlawfully, willfully and feloniously obstructed justice with deceit and intent to defraud by intentionally sending
 
 *877
 
 a letter purporting to be from the victim in his pending court cases and containing a bomb threat to the personnel of the United States Federal Courthouse located on New Bern Avenue, Raleigh, NC 27601. This act was done in violation of the common law of North Carolina and against the peace and dignity of the State.
 

 At trial, defendant argued that the obstruction of justice charges should be misdemeanors, not felonies, based on
 
 State v. Glidden
 
 ,
 
 317 N.C. 557
 
 ,
 
 346 S.E.2d 470
 
 (1986). The trial court granted defendant's motion to dismiss the obstruction of justice charge in 15 CRS 5832, since the evidence showed that the offense was never completed-the letter never reached the Federal Building-and instead instructed on the lesser included offense of attempted obstruction of justice, a class I felony. But the court refused to dismiss the remaining obstruction of justice felony charges based upon defendant's argument that to be a felony, the offense must always involve deceit and fraud. Defendant now argues this was error and that the North Carolina Supreme Court mandated a definitional test to elevate misdemeanor offenses to felonies under
 
 N.C. Gen. Stat. § 14-3
 
 (b) (2017).
 
 [7]
 
 , and the obstruction of justice offenses at issue here-which involved sending threatening letters-should not have been elevated to a felony because such offense "does not by its definition include the elements of secrecy and malice[.]"
 

 Glidden
 
 , which defendant relies on, is inapposite to the present case. In
 
 Glidden
 
 , "[t]he issue before this Court [was] whether the misdemeanor of transmitting an unsigned threatening letter in violation of N.C.G.S. § 14-394 is an offense which is made a felony by N.C.G.S. § 14-3(b)."
 
 Glidden
 
 ,
 
 317 N.C. at 558
 
 ,
 
 346 S.E.2d at 470
 
 . The defendant in
 
 Glidden
 
 was charged under
 
 N.C. Gen. Stat. § 14-394
 
 (2017), which makes transmission of an anonymous threatening letter a Class 1 misdemeanor; the State then sought to elevate the charge to a felony based upon
 
 N.C. Gen. Stat. § 14-3
 
 (b). The North Carolina Supreme Court held that the offense of transmitting an unsigned letter did not fall within the class of misdemeanors under
 
 N.C. Gen. Stat. § 14-3
 
 (b) punishable as felonies because "the offense of transmitting unsigned threatening letters does not by definition include the elements of secrecy
 
 and
 
 malice."
 
 Glidden
 
 ,
 
 317 N.C. at 561
 
 ,
 
 346 S.E.2d at 473
 
 .
 

 *878
 
 Here, defendant was charged with common law obstruction of justice; he was not charged under
 
 N.C. Gen. Stat. § 14-394
 
 (2017). While it is true that at common law, obstruction of justice was ordinarily treated as a misdemeanor offense, this Court has repeatedly recognized felony obstruction of justice as a crime under
 
 N.C. Gen. Stat. § 14-3
 
 (b).
 
 See, e.g.
 
 ,
 
 State v. Cousin
 
 ,
 
 233 N.C. App. 523
 
 , 537,
 
 757 S.E.2d 332
 
 , 342-43 (2014) ("The elements of common law felonious obstruction of justice are: (1) the defendant unlawfully and willfully; (2) obstructed justice;
 

 *463
 
 (3) with deceit and intent to defraud.");
 
 State v. Blount
 
 ,
 
 209 N.C. App. 340
 
 , 343,
 
 703 S.E.2d 921
 
 , 924 (2011) ("Common law obstruction of justice, the offense with which defendant was charged, is ordinarily a misdemeanor.
 
 N.C. Gen. Stat. § 14-3
 
 (b) provides that a misdemeanor may be elevated to a felony if the indictment alleges that the offense is infamous, done in secrecy and malice, or done with deceit and intent to defraud." (Citations, quotation marks, brackets, and ellipses omitted) ). We are bound by prior decisions of this Court.
 
 See, e.g.,
 

 In re Civil Penalty
 
 ,
 
 324 N.C. 373
 
 , 384,
 
 379 S.E.2d 30
 
 , 37 (1989) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court.").
 

 The indictments here properly alleged all necessary elements of felonious obstruction of justice. We hold that the trial court properly denied defendant's motion to dismiss the charges of felony obstruction of justice and felony attempted obstruction of justice.
 

 Conclusion
 

 We find no error with the trial court's judgment.
 

 NO ERROR.
 

 Judges HUNTER and DAVIS concur.
 

 [1]
 

 A pseudonym is used to protect the victim's identity and for ease of reading.
 

 [2]
 

 The parties stipulated in the record on appeal that defendant was charged with assault on a female on 26 December 2014 in Wake County File No. 14-CR-229975 and then "[s]ubsequently, on January 7, 2015, [defendant] was charged with habitual misdemeanor assault in Wake County File No. 15-CR-200503, the basis of this charge being the December 26, 2014 assault on a female charge in Wake County File No. 14-CR-229975." The parties also stipulated that "[n]one of the documents in Wake County File No. 14-CR-229975 have been included in this Record on Appeal."
 

 [3]
 

 See
 
 N.C. Gen. Stat. § 15A-534.1(b) (2017), "Crimes of domestic violence; bail and pretrial release" ("A defendant may be retained in custody not more than 48 hours from the time of arrest without a determination being made under this section by a judge. If a judge has not acted pursuant to this section within 48 hours of arrest, the magistrate shall act under the provisions of this section.").
 

 [4]
 

 On 25 September 2017, the State filed a motion to amend the record on appeal, noted that the original record contains only the front page of the Conditions of Release and Release Orders, and asked this Court to allow the record on appeal to be amended so that the back side of these orders may be included. We grant this motion so that we may fully address this issue on appeal.
 

 [5]
 

 As noted above, the parties stipulated that the record on appeal contains no further documents from File No. 14 CR 229975. The back side of Order 1 contains the modification entry: "Dismissed" and is dated 29 January 2015, so with no additional information available, we can only presume that this means that file itself must have been dismissed at that time.
 

 [6]
 

 Defendant does not dispute that the ex parte DVPO which was in effect from 26 December 2014 to 5 January 2015 would be a "court order in effect prohibiting the conduct described under"
 
 N.C. Gen. Stat. § 14-277
 
 .3A. In addition, this time period was also covered by Order 1, so the additional prohibition of the ex parte DVPO is superfluous.
 

 [7]
 

 N.C. Gen. Stat. Ann. § 14-3
 
 (b) : "If a misdemeanor offense as to which no specific punishment is prescribed be infamous, done in secrecy and malice, or with deceit and intent to defraud, the offender shall, except where the offense is a conspiracy to commit a misdemeanor, be guilty of a Class H felony."