ELMORE, Judge.
 

 *656
 

 *512
 
 This action arose from the commercial lease of lakefront property at Tucker Lake in Johnston County that began 1 January 2012 and ended 31 December 2016. Lessors Trenton Glen Tucker, Allison C. Tucker, Hollie Tucker Winters, Brian Keith Winters, and Tucker Lake Recreations, Inc., as well as Sharlette Tucker, Glenwood Tucker, and Tim Richardson (collectively, "defendants"), appeal a trial court order that adopted a compulsory referee's report. In its report, the referee recommended that the lessees, Paula K. Bullock and Fynnmaster, LLC (collectively, "plaintiffs"), be awarded Rule 60(b) relief in the form of striking a provision in a 30 April 2014 order that amended the initial lease. That provision provided that "[u]pon termination of the lease, ... [p]laintiffs shall remove ... grain bin anchors" they had previously installed in Tucker Lake to support the cable system required to operate their commercial waterskiing enterprise. In its report, the referee found that defendants have thwarted plaintiffs' earnest efforts to remove the anchors since at least October 2016, and concluded that, at the time its report issued one day
 
 *513
 
 before the lease expired, it was now impossible for plaintiffs to comply with this provision of the 30 April 2014 order. After a hearing on defendants' exception to the referee's report, the trial court adopted the report in its entirety. Defendants appeal.
 

 On appeal, defendants contend the trial court's order adopting the referee's report should be reversed because (1) the trial court perfunctorily adopted the report without adequately reviewing the evidentiary sufficiency of the referee's findings; (2) certain findings were unsupported by the evidence and the findings did not support the conclusions; and (3) the Rule 60(b) relief recommended was improper because it (a) was premised on an erroneous conclusion that it was impossible for plaintiffs to perform the anchor-removal requirement of the 30 April 2014 order, and (b) inappropriately modified a material provision of a consent order. Defendants also contend that, even if the trial court did not reversibly err in these respects, (4) the case must be remanded for entry of a proper judgment because the trial court's order merely adopted the referee's report.
 

 We hold that the trial court adequately reviewed defendants' exceptions to the referee's findings and did not err in adopting the report in its entirety. The challenged findings were supported by the evidence, the challenged conclusions were supported by the findings, the 30 April 2014 order amending the initial lease was not a valid consent order, and the Rule 60(b) relief recommended did not amount to an abuse of discretion. Accordingly, we affirm the trial court's order. However, we remand to the trial court with instructions to enter a judgment concordant with that adopted report.
 

 I. Background
 

 On 1 January 2012, plaintiffs entered into a five-year
 
 pro se
 
 commercial lease with defendants Trenton Glen Tucker, Allison C. Tucker, Hollie Tucker Winters, Brian Keith Winters, and Tucker Lake Recreations, Inc., to use a 48-acre parcel of lakefront property at Tucker Lake for plaintiffs' "operations of a water recreation operation including ... the construction and maintenance of underwater and above water cabling, docks buildings, and related facilities." Soon after, disputes concerning the parties' performances under the lease arose. Although the parties have been actively litigating since April 2012, we limit our discussion of the extensive procedural history to only that relevant to provide context and adjudicate the appeal.
 

 On 3 April 2012, plaintiffs filed a verified complaint against defendants. Plaintiffs asserted claims of breach of contract, civil conspiracy,
 
 *514
 
 tortious interference with contract, and unfair and deceptive trade practices ("UDTP"); sought declaratory judgments as to interpreting certain lease provisions; and sought a temporary restraining order ("TRO") and a preliminary injunction on the grounds that defendants have "frustrate[d their] efforts ... to construct a cable water skiing facility[.]" On 12 April 2012, defendants cross-moved for a TRO and preliminary injunction, seeking to enjoin plaintiffs from continuing construction. On 26 April 2012, the trial court entered a TRO that,
 
 inter alia
 
 , enjoined defendants from unreasonably interfering with plaintiffs' business
 
 *657
 
 plans. Plaintiffs then proceeded with their plan of installing three large grain bin anchors in Tucker Lake to support the cable system required for their waterskiing enterprise.
 

 On 4 June 2012, defendants filed their answer to the complaint, moved under Rule 12(b)(6) to dismiss plaintiffs' claims, and asserted eight affirmative defenses. Defendants also filed a third-party complaint against plaintiffs, and John Bemis, Jeff Roberts, and Jakub Pilecky (collectively, "third-party defendants"). Defendants, as third-party plaintiffs, asserted claims of breach of contract, fraud, trespass to real property, trespass to personal property, civil conspiracy, UDTP, summary ejectment, and assault. After further litigation, likely due to the number of claims and the parties' contentiousness, the trial court on 21 May 2013 entered an order appointing a compulsory referee to,
 
 inter alia
 
 , "resolve any disagreement among the parties relating to the performance of the lease agreement" and "serve until the trial of this action or until further order of the Court." Disputes about the lease and litigation continued.
 

 In mid-January 2014, plaintiffs voluntarily dismissed six of their claims, moved for summary judgment on their three remaining claims seeking declaratory judgments on interpreting certain lease provisions, and moved for summary judgment on all of defendants' claims in their third-party complaint. After a bench trial scheduled for 21 January, the trial court permitted the parties to negotiate outside its presence to reach a resolution of their claims. After a full day of negotiation on 22 January, the parties announced in open court they had reached an agreement, which they requested the trial court adopt as a consent order. The trial court instructed the parties to draft a consent order and reconvene the next day for its entry. But after exchanging several drafts, the parties could not mutually agree to the language of the consent order.
 

 In mid-February 2014, the parties filed cross-motions to enforce the settlement agreement they previously announced to the trial court on 22 January. After a hearing, at which both parties presented their proposed settlement agreements, the trial court entered an order on 30 April
 
 *515
 
 2014 resolving the parties' claims and amending some provisions of the initial lease. In its order, the trial court noted the parties' "ultimate[ ] ineffective work toward" "attempt[ing] to finalize a Consent Order"; elected to "adopt[ ] Plaintiff's Motion and Order, with the addition of [two] paragraphs"; and added the following relevant provision to the lease agreement: "Upon termination of the lease [on 31 December 2016], Plaintiffs shall remove the cable system and grain bin anchors." The parties operated under the modified lease but further disputes arose and litigation continued.
 

 Around 7 October 2016, plaintiffs began removing the cable system attached to the anchors from the premises. On 12 October, defendants moved for a TRO, seeking to enjoin plaintiffs from removing the cable system "while leaving the concrete grain bin anchors for Defendants to deal with later[.]" That same day, the trial court granted the TRO. At a review hearing two days later, evidence was presented that plaintiffs had hired an engineer to develop a plan for removing the anchors; that the engineer had proposed two plans that required lowering the water level of the lake, which plaintiffs had presented to defendants; and that defendants had rejected both proposals on the grounds that they refused to lower the water level due to ecological concerns with the lake.
 
 [1]
 
 After the hearing, the trial court entered an order on 20 October 2016 dissolving the prior TRO and denying defendants' preliminary injunction motion.
 

 On 26 October 2016, plaintiffs filed a "Motion to Modify Permanent Injunction" in the trial court, requesting that "the requirement to remove the 'grain bin anchors' be stricken from the permanent injunction" of the 30 April 2014 order. Plaintiffs argued that the lease required defendants to "assist [Plaintiffs]
 

 *658
 
 in lowering water level for general maintenance of water quality in October of each year" but that defendants "have refused to lower the water level of the lake," which "needs to be lowered at least 15 feet to remove the 'grain bin anchors.' " Therefore, plaintiffs requested, "[d]ue to [defendants'] refusal to lower the water level," the trial court "modify the requirement to remove the 'grain bin anchors.' "
 

 At a 3 November 2016 hearing on plaintiffs' motion, the trial court refused to consider the matter and referred it to the referee. On 15 November, defendants filed their response to plaintiffs' motion to modify the 30 April 2014 order and a request that the referee report on additional lease issues.
 

 *516
 
 On 30 December 2016, one day before the lease expired, the referee electronically submitted its report to the parties. In its report, the referee found that plaintiffs were ready, willing, and able to comply with the anchor-removal provision, having retained an engineer and having submitted two proposals to remove the anchors to defendants in October 2016. However, defendants rejected both proposals on the grounds that they refused to lower the water level but failed to provide an alternative plan or present evidence to support their rationale that lowering the water level would cause ecological damage to the lake, refused to lower the water level as they had done annually in Octobers past, and moved for a TRO that halted plaintiffs' progress, all of which served to effectively frustrate plaintiffs from complying with the anchor-removal provision of the amended lease. As the lease was set to expire one day after its report issued, the referee concluded it was now impossible for plaintiffs to remove the anchors "[u]pon termination of the lease." The referee determined:
 

 The plaintiffs cannot be expected to comply with Paragraph 9 of the April 30, 2014 order at this time. The Plaintiffs made a good faith effort to develop and implement a plan to remove the anchors while attempting to balance the environment of the lake with the need to remove the anchors. These efforts have been thwarted by the Defendants who do not want the lake level lowered but who have not offered any alternative plans for consideration nor evidence of potential damages to the lake at the level they believe is likely to occur. With the end of the lease term now upon the parties and the resistance to the Plaintiffs' plan of removal by the Defendants, it has become impossible for the Plaintiffs to fulfill this part of the April 30, 2014 order.
 

 Therefore, the referee recommended that the trial court award plaintiffs relief under Rule 60(b)(6) in the form of striking the provision of the 30 April 2014 order amending the lease that required them to remove the anchors.
 

 On 13 January 2017, defendants filed with the trial court an exception to the referee's report "in its entirety" but did not specifically except to any finding or conclusion. On 28 June, after several continuances, the trial court heard defendants' exception to the referee's report. On 3 August 2017, the trial court entered an order adopting "all findings of fact and conclusions of law" contained in the referee's report. Defendants appeal.
 

 *517
 

 II. Issues Presented
 

 On appeal, defendants assert the trial court erred by (1) "fail[ing] to make a sufficient review of the referee's findings as required by N.C. Gen. Stat. § 1A-1, Rule 53(g)(2)"; and (2) adopting the referee's report because "the referee's findings of fact were not supported by the evidence, and the conclusions of law were not supported by the findings." Additionally, defendants contend, even if the trial court adequately reviewed and properly adopted the report, (3) "the case should still be remanded for entry of a proper judgment."
 

 III. Sufficiency of Review
 

 Defendants first assert the trial court erred by "fail[ing] to make a sufficient review of the referee's findings as required by N.C. Gen. Stat. § 1A-1, Rule 53(g)(2)" on the grounds that the trial court " 'perfunctorily placed the stamp of ... approval upon the labor of the referee' because the referee's findings were unsupported and contradictory." We disagree.
 

 N.C. Gen. Stat. § 1A-1, Rule 53(g)(2) (2017) governs judicial review of a
 
 *659
 
 referee's report and provides in pertinent part: "All or any part of the report may be excepted to by any party.... The judge after hearing may adopt, modify or reject the report in whole or in part, render judgment, or may remand the proceedings to the referee with instructions." Ordinarily, where
 

 exceptions are taken to a referee's findings of fact and law, it is the duty of the [trial] judge to consider the evidence and give his own opinion and conclusion, both upon the facts and the law. He is not permitted to do this in a perfunctory way, but he must deliberate and decide as in other cases-use his own faculties in ascertaining the truth and form his own judgment as to fact and law. This is required not only as a check upon the referee and a safeguard against any possible errors on his part, but because he cannot review the referee's findings in any other way.
 

 Quate v. Caudle
 
 ,
 
 95 N.C. App. 80
 
 , 83,
 
 381 S.E.2d 842
 
 , 844 (1989) (quoting
 
 Thompson v. Smith
 
 ,
 
 156 N.C. 345
 
 , 346,
 
 72 S.E. 379
 
 , 379 (1911) ). However, where a party perfunctorily excepts to a referee's report "in its entirety" and fails to specifically except to any finding, a trial court need not review the evidentiary sufficiency of the referee's findings.
 
 See, e.g.
 
 ,
 
 Anderson v. McRae
 
 ,
 
 211 N.C. 197
 
 , 198,
 
 189 S.E. 639
 
 , 640 (1937) ("[I]n the absence of exceptions to the factual findings of a referee, such findings are conclusive, and where no exceptions are filed, the case is to be
 
 *518
 
 determined upon the facts as found by the referee." (citations omitted) );
 
 Chard v. Warren
 
 ,
 
 122 N.C. 75
 
 , 79,
 
 29 S.E. 373
 
 , 374 (1898) ("There was no exception by any of the parties to that finding of the referee, at any time, and it ought to have been confirmed by the court, because there had been no exception filed to the finding of the referee on that point." (citation omitted) ).
 

 Here, in their written exception to the referee's report, defendants failed to except to any particular factual finding or legal conclusion made by the referee; rather, they excepted to the referee's report "in its entirety." A careful review of the seventy-two-page transcript of the hearing before the trial court reveals that the only relevant exception defendants took to the referee's findings that they now challenge on appeal concerned its finding about the absence of evidence that the anchors could be removed without lowering the water level of the lake. As no other relevant exceptions were made to the referee's findings, they were binding and the trial court was not required to review them.
 
 Anderson
 
 ,
 
 211 N.C. at 198
 
 ,
 
 189 S.E. at 640
 
 (citations omitted).
 

 We are satisfied by the two-hour hearing on defendant's exception to the referee's report, and by the language in the trial court's order-that it "reviewed in detail the Referee's Report of December 30, 2016, Defendants' exceptions to the same, the case file, briefs and affidavits submitted by counsel, the materials submitted to the referee, [and] prior Orders of this Court"-that the trial court thoughtfully considered defendants' exceptions and did not perfunctorily place a stamp of approval on the referee's labor. Accordingly, we overrule defendants' argument that the trial court inadequately reviewed the referee's findings under Rule 52(g)(2).
 

 IV. Adopting the Referee's Report
 

 Defendants next contend the trial court erred by adopting the referee's report on the grounds that "the referee's findings of fact were not supported by the evidence, and the conclusions of law were not supported by the findings." We disagree.
 

 A. Review Standard
 

 Appellate review of factual findings made by a referee and adopted by the trial court is limited to whether the challenged findings were supported by "any competent evidence."
 
 See
 

 Lawson v. Lawson
 
 ,
 
 236 N.C. App. 576
 
 , 578,
 
 763 S.E.2d 570
 
 , 572 (2014) ("In reviewing the trial court's judgment entered on the referee's report, the findings of fact by a referee, approved by the trial [court], are conclusive on appeal if supported
 
 *519
 
 by any competent evidence." (quoting
 
 Cleveland Constr., Inc. v. Ellis-Don Constr., Inc.
 
 ,
 
 210 N.C. App. 522
 
 , 531-32,
 
 709 S.E.2d 512
 
 , 520 (2011) ) ). Challenged legal conclusions are reviewed
 
 de novo
 
 .
 

 Id.
 

 ("Any conclusions of law made by the referee, however, are reviewed
 
 de novo
 
 by the trial court, and the trial court's conclusions are reviewed
 
 de novo
 

 *660
 
 by the appellate court." (quoting
 
 Cleveland Constr.
 
 ,
 
 210 N.C. App. at 531-32
 
 ,
 
 709 S.E.2d at
 
 520 ) ).
 

 B. Findings and Conclusions
 

 Defendants challenge the evidentiary sufficiency of the following purported findings made by the referee and adopted by the trial court: (1) "[t]he testimony of an engineer was that in order to remove the anchors the water level of the lake would need to be lowered"; (2) "[t]here was no showing by the Defendants to the court of any alternative plan for removing the anchors that would not necessitate the lowering of the lake level"; (3) "[p]laintiffs cannot be expected to comply with Paragraph 9 of the April 30, 2014 order at this time"; and (4) "[w]ith the end of the lease term now upon the parties and the resistance to the Plaintiffs' plan of removal by the Defendants, it has become impossible for the Plaintiffs to fulfill this part of the April 30, 2014 order."
 

 As to the first statement, because the recitation of testimony is not a valid finding,
 
 see, e.g.
 
 ,
 
 In re M.R.D.C.
 
 ,
 
 166 N.C. App. 693
 
 , 699,
 
 603 S.E.2d 890
 
 , 894 (2004) ("Recitations of the testimony of each witness
 
 do not
 
 constitute
 
 findings of fact
 
 [.]" (quoting
 
 Moore v. Moore
 
 ,
 
 160 N.C. App. 569
 
 , 571-72,
 
 587 S.E.2d 74
 
 , 75 (2003) ) ), its evidentiary sufficiency is irrelevant. Nonetheless, we note that despite plaintiffs' engineer during cross-examination at the October 2016 hearing conjuring up a proposal to remove the anchors without lowering the water level of the lake, the two plans he formally proposed required lowering the water level. As to the second, defendants have not lodged a legitimate evidentiary challenge by pointing to evidence that they, indeed, presented a plan for removing the anchors not requiring lowering the water level; rather, they rely solely on plaintiffs' engineer's testimonial proposal that it might be possible the anchors could be so removed. Accordingly, we uphold the finding that
 
 defendants
 
 failed to present evidence of an alternative plan.
 

 As the third and fourth statements are legal conclusions,
 
 see
 

 Lamm v. Lamm
 
 ,
 
 210 N.C. App. 181
 
 , 189,
 
 707 S.E.2d 685
 
 , 691 (2011) ("Generally, 'any determination requiring the exercise of judgment ... or the application of legal principles ... is more properly classified a conclusion of law.' " (quoting
 
 In re Helms
 
 ,
 
 127 N.C. App. 505
 
 , 510,
 
 491 S.E.2d 672
 
 , 675 (1997) ) ), our review on appeal is whether the referee's findings adopted
 
 *520
 
 by the trial court supported these conclusions,
 

 id.
 

 ("A finding of fact that is essentially a conclusion of law will be treated as a fully reviewable conclusion of law on appeal." (citing
 
 M.R.D.C.
 
 ,
 
 166 N.C. App. at 697
 
 ,
 
 603 S.E.2d at
 
 893 ) ). To support these conclusions, the trial court adopted the referee's following relevant findings:
 

 [A]s early as October 2016 the Plaintiffs were working towards removing the anchors in an effort to comply with Paragraph 9 of the April 30, 2014 order that "[U]pon termination of the lease, the Plaintiffs shall remove the cable system and grain bin anchors." ...
 

 .... The Plaintiffs have employed an engineer to develop a plan for removing the anchors. The engineer has present[ed] two plans to the Plaintiffs ... each involving the lowering of the lake levels.... Before the Plaintiffs [could] proceed with the plan to remove the anchors the Defendants have objected to the removal and the process has come to a halt with a filing of a [TRO] by the Defendants. The Defendants have offered no alternative plan for removing the anchors nor have they offered any independent testimony regarding the harm they believe will occur to the lake with the lowering of the lake level.
 

 The lease now terminates on December 31, 2016. This motion to modify the April 30, 2014 order was filed several days after the Defendants filed for a [TRO]. These filing[s] have delayed the process of removing the anchors prior to the termination of the lease ....
 

 These findings, combined with the fact that the referee's report was issued one day before the lease expired, support the challenged conclusions that "Plaintiffs cannot be expected to comply with Paragraph 9 of the April 30, 2014 order
 
 at this time
 
 " and "
 
 [w]ith the end of the lease term now upon the parties
 
 and the resistance to the Plaintiffs'
 

 *661
 
 plan of removal by the Defendants,
 
 it has become impossible for the Plaintiffs to fulfill this part of the April 30, 2014 order
 
 ." (Emphasis added.) Accordingly, we hold the trial court did not err in adopting the challenged findings and conclusions.
 

 C. Rule 60(b) Relief
 

 Defendants also challenge the recommendation that plaintiffs be awarded Rule 60(b)(6) relief in the form of striking the requirement of the 30 April 2014 order that "[u]pon termination of the lease, the
 
 *521
 
 Plaintiffs shall remove the ... grain bin anchors." Defendants argue (1) the underlying conclusion that it was impossible for plaintiffs to comply with this requirement was erroneous because "[p]laintiffs' own expert testified it was possible to remove the ... anchors without draining the lake[,]" and (2) the recommended relief was improper because the 30 April 2014 order was a consent order, and neither the referee nor the trial court had authority to modify a material term of such a consent order. We disagree.
 

 1. Review Standard
 

 We review a trial court's ruling on whether to grant Rule 60(b) relief for abuse of discretion.
 
 See
 

 Davis v. Davis
 
 ,
 
 360 N.C. 518
 
 , 523,
 
 631 S.E.2d 114
 
 , 118 (2006) ("[T]he standard of review of a trial court's denial of a Rule 60(b) motion is abuse of discretion." (citing
 
 Sink v. Easter
 
 ,
 
 288 N.C. 183
 
 , 198,
 
 217 S.E.2d 532
 
 , 541 (1975) ) ).
 

 2. Grounds for Rule 60(b) Relief
 

 Rule 60(b)(6) authorizes relief from a judgment or order for "[a]ny ... reason justifying relief from the operation of the judgment." N.C. Gen. Stat. § 1A-1, Rule 60(b)(6) (2017). "The test for whether a judgment [or] order ... should be modified ... under Rule 60(b)(6) is two pronged: (1) extraordinary circumstances must exist, and (2) there must be a showing that justice demands that relief be granted."
 
 Curran v. Barefoot
 
 ,
 
 183 N.C. App. 331
 
 , 343,
 
 645 S.E.2d 187
 
 , 195 (2007) (quoting
 
 Howell v. Howell
 
 ,
 
 321 N.C. 87
 
 , 91,
 
 361 S.E.2d 585
 
 , 588 (1987) ). "Exercise of this equitable power is within the full discretion of the trial judge."
 
 N.C. Dep't of Transp. v. Laxmi Hotels of Spring Lake, Inc.
 
 , --- N.C. App. ----, ----,
 
 817 S.E.2d 62
 
 , 71 (2018) (citing
 
 Thacker v. Thacker
 
 ,
 
 107 N.C. App. 479
 
 , 482,
 
 420 S.E.2d 479
 
 , 480 (1992) ).
 

 An "extraordinary circumstance ... exist[s]" and "justice demands" Rule 60(b)(6) relief in the form of modifying a judgment by striking an award of specific performance pursuant to a contract when the movant shows the performance ordered is impossible.
 
 See, e.g.
 
 , Curran,
 
 183 N.C. App. at 343
 
 ,
 
 645 S.E.2d at 195
 
 (holding the trial court erred by denying Rule 60(b)(6) relief in the form of amending a judgment to strike an order of specific performance requiring one party to convey to an adverse party three watercraft the party proved it did not own).
 

 Here, the trial court adopted the following relevant findings and conclusions made by the referee to support awarding Rule 60(b)(6) relief:
 

 [A]s early as October 2016 the Plaintiffs were working towards removing the anchors in an effort to comply
 
 *522
 
 with Paragraph 9 of the April 30, 2014 order that "[U]pon termination of the lease, the Plaintiffs shall remove the cable system and grain bin anchors." ...
 

 .... The Plaintiffs have employed an engineer to develop a plan for removing the anchors.... Before the Plaintiffs [could] proceed with the plan to remove the anchors the Defendants have objected to the removal and the process has come to a halt with a filing of a [TRO] by the Defendants. The Defendants have offered no alternative plan for removing the anchors nor have they offered any independent testimony regarding the harm they believe will occur to the lake with the lowering of the lake level.
 

 The Plaintiffs made a good faith effort to develop and implement a plan to remove the anchors while attempting to balance the environment of the lake with the need to remove the anchors. These efforts have been thwarted by the Defendants who do not want the lake level lowered but who have not offered any alternative plans for consideration nor evidence of potential
 
 *662
 
 damage to the lake at the level they believe is likely to occur. With the end of the lease term now upon the parties and the resistance to the Plaintiffs' plan of removal by the Defendants, it has become impossible for the Plaintiffs to fulfill this part of the April 30, 2014 order.
 

 .... The Defendants object to lowering the lake levels and have sought to restrain the Plaintiffs from so doing. Given that the lease will end in one day, the Plaintiffs have been stopped from proceeding with the plan to remove the anchors prior to the termination of the lease and the Defendants have made no offer or an alternative plan for removing the anchors. It is now impossible for the portion of Paragraph 9 of the April 30, 201[4] order to be enforced.
 

 Defendants challenge the conclusion that the plaintiffs' performance of the anchor-removal requirement of the 30 April 2014 order was impossible on the grounds that "[p]laintiffs' own expert testified it was possible to remove the ... anchors without draining the lake." Contrary to defendants' interpretation, we construe this impossibility-of-performance conclusion not as one grounded in an underlying determination that it was impossible for plaintiffs to "remove the ... grain
 
 *523
 
 bin anchors" without lowering the water level. Rather, we construe the conclusion as one grounded in an underlying determination that it was now impossible for plaintiffs to remove the anchors "[u]pon termination of the lease" because the lease expired the next day. As the referee and trial court correctly concluded, the doctrine of impossibility operated to excuse plaintiffs' from further performing this provision of the modified lease. By the time the referee issued its 30 December 2016 report, it had become impossible for plaintiffs to remove the anchors "[u]pon [the 31 December 2016] termination of the lease."
 

 Further, the lease provided that "[defendants] agree[ ] to assist [plaintiffs] in lowering water level for general maintenance of water quality in October of each year," and the referee made the following relevant unchallenged findings: (1) "Defendants ... knew that anchors would need to be removed as this was made a part of the [30 April 2014] order"; (2) "the water levels of the lake are annually lowered during the months of September to December"; (3) "[a]t the time the [30 April 2014] order was entered ... [it] did not place any restrictions on or address the lowering of the lake level as it was regular practice to lower the lake"; (4) "[p]laintiffs now come to the point in time that the lake level is usually lowered" and "have employed an engineer to develop a plan for removing the anchors," who "present[ed] two plans ... involving ... lowering ... the lake levels"; (5) "[d]efendants have objected to the removal and the process has come to a halt with a filing of a [TRO] by the [d]efendants"; (6) this "filing [has] delayed the process of removing the anchors prior to the termination of the lease"; (7) "[p]laintiffs made a good faith effort to develop and implement a plan to remove the anchors" but their "efforts have been thwarted by the [d]efendants who do not want the lake level lowered but who have not offered any alternative plans"; (8) "[t]here is nothing in the record to indicate that at the time the [30 April 2014 order] was entered the [d]efendants would later raise an objection to the lowering of the water level to remove the anchors at the termination of the lease as the water level of the lake was known to be lowered annually by all parties"; and (9) "[d]efendants object to lowering the lake levels and have sought to restrain the [p]laintiffs from so doing."
 

 These unchallenged findings adopted by the trial court establish, alternatively, that plaintiffs made a sufficient showing that defendants effectively prevented them from removing the anchors "[u]pon termination of the lease."
 
 See
 

 Harwood v. Shoe
 
 ,
 
 141 N.C. 161
 
 , 163,
 
 53 S.E. 616
 
 , 616 (1906) ("It is a salutary rule of law that one who prevents the performance of a condition, or makes it impossible by his own act, will not be permitted to take advantage of the nonperformance.");
 

 *524
 

 see also
 

 Goldston Bros. v. Newkirk
 
 ,
 
 233 N.C. 428
 
 , 432,
 
 64 S.E.2d 424
 
 , 427 (1951) ("As a general rule, prevention by one party excuses nonperformance of an antecedent obligation by the adversary party, and ordinarily the party whose performance is thus prevented is discharged from further performance[.]").
 

 *663
 
 Accordingly, we conclude that the findings established "extraordinary circumstances ... exist[ed]" based on defendants' refusing to annually lower the water level and rejecting plaintiffs' proposals to remove the anchors, and that plaintiffs showed "justice demands that relief be granted" from enforcing the modified lease requirement that they remove the anchors "[u]pon termination of the lease" based upon the doctrines of impossibility and/or prevention. Accordingly, we hold the trial court did not abuse its discretion in determining plaintiffs are entitled to relief under Rule 60(b)(6) of striking this requirement from the 30 April 2014 order.
 

 3. Application of Rule 60(b) Relief to Settlement Agreement
 

 Defendants also assert the challenged Rule 60(b) relief recommended was improper because the 30 April 2014 order represented the parties' settlement agreement, and Rule 60(b) provides no authority to modify material terms of such a consent order or judgment. Because we conclude the 30 April 2014 order was not entered by consent, we overrule this argument.
 

 In the 30 April 2014 order, the trial court made the following unchallenged findings:
 

 3. The parties, after a full day of settlement negotiations [on 22 January 2014] outside the presence of the Court, informed the Court in chambers of a settlement.
 

 4. All parties ... with their attorneys appeared before the Court in open session and recited for the record the terms of a settlement agreeable to all parties hereto....
 

 ....
 

 6. The parties ... consented to and agreed upon the terms as being entered pursuant to this Order [.] ...
 

 7.
 
 After further hearings or appearances before this Court, significant discussion and correspondence among the parties' counsel, attempts to finalize a Consent Order, and ultimately ineffective work toward that end,
 

 *525
 

 Plaintiffs and Defendants filed separate motions to Enforce the Settlement Agreement.
 

 8.
 
 The Court adopts Plaintiffs Motion and Order, with the addition of the paragraph 8, and 17, herein.
 

 (Emphasis added.) As reflected, although the parties after negotiating on 22 January 2014 announced in open court they had reached a settlement agreement, they were unable to agree to the terms of a consent order. Rather, both parties later moved to enforce the settlement agreement and, at the hearing on the motions, both parties presented their proposed settlement agreements to the trial court. The trial court's 30 April 2014 order adopted plaintiffs' proposed agreement but added two other paragraphs. This establishes that the order was contested at least by defendants and was therefore not entered by consent. Further, contrary to the styling of plaintiffs' proposed settlement agreement as "Consent Order," the 30 April 2014 order was styled merely as "Order"; and only the trial judge, not the parties, signed the order. As the 30 April 2014 order was not a consent order, we overrule this argument.
 

 V. Entry of Proper Judgment
 

 Last, defendants contend that even if the trial court's review and adoption of the referee's report did not amount to reversible error, the case must be remanded for entry of a proper judgment. We agree.
 

 Under North Carolina Civil Procedure Rule 53(g)(2), "[n]o judgment may be rendered on any reference except by the judge." N.C. Gen. Stat. § 1A-1, Rule 53(g)(2). Where, as here, a trial court adopts a referee's report without entering a judgment, the appropriate disposition is to remand the case for entry of a judgment in accordance with the approved referee's report.
 
 See
 

 Morpul, Inc. v. Mayo Knitting Mill, Inc.
 
 ,
 
 265 N.C. 257
 
 , 268,
 
 143 S.E.2d 707
 
 , 716 (1965) ("We note, however, that [the trial judge], with the exception of the one item of cost, merely affirmed,
 
 ipsis verbis
 
 , the referee's report, without entering any judgment upon it. But the parties have treated his order as a judgment, and, to dispose of the appeal, so do we. The case is remanded to the Superior Court for judgment in accordance with the report as amended by [the trial judge].");
 
 see also
 

 *664
 

 Rouse v. Wheeler
 
 ,
 
 17 N.C. App. 422
 
 , 427,
 
 194 S.E.2d 555
 
 , 558 (1973) ("We find no error in the order of approval and confirmation [of the referee's report] by [the trial judge]. However, in view of the fact that [the trial judge] did not enter a [j]udgment based on the approved findings of fact and conclusions of law other than to make an allowance for the referee's fee, this cause is remanded to the superior court with directions that a proper judgment be entered herein."). Accordingly, we
 
 *526
 
 remand this matter to the trial court with instructions to enter a proper judgment in accordance with the adopted referee's report.
 

 VI. Conclusion
 

 The trial court adequately reviewed defendants' exceptions to the referee's findings. The challenged findings were supported by competent evidence, the challenged conclusions were supported by the findings, and the trial court did not abuse its discretion in ultimately determining that plaintiffs should be awarded relief under Rule 60(b)(6) in the form of striking the requirement of the 30 April 2014 order that "[u]pon termination of the lease, Plaintiffs shall ... remove the grain bin anchors." Accordingly, we affirm the trial court's order adopting the referee's report. However, we remand this matter to the trial court with instructions to enter a proper judgment concordant with that report.
 

 AFFIRMED AND REMANDED.
 

 Judges DILLON and DAVIS concur.
 

 [1]
 

 Because defendants have only provided 122 of 219 pages of transcript from this hearing, our discussion is limited.
 
 Miller v. Miller
 
 ,
 
 92 N.C. App. 351
 
 , 353,
 
 374 S.E.2d 467
 
 , 468 (1988) ("It is the appellant's responsibility to make sure that the record on appeal is complete and in proper form." (citation omitted) ).