IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-177

No. COA20-368

Filed 4 May 2021

Cumberland County, Nos. 10 CVS 2964, 17 CVS 6272

JOHN C. CULBRETH, JR., Individually and Derivatively on Behalf of SOUTHEAST DEVELOPMENT OF CUMBERLAND, LLC, and SOUTHEAST DEVELOPMENT OF CUMBERLAND, LLC, Plaintiffs

v.

CHRIS MANNING, Defendant

JOHN C. CULBRETH, JR., Derivatively on Behalf of SOUTHEAST DEVELOPMENT OF CUMBERLAND, LLC, Plaintiff

v.

GREEN VALLEY SOUTH LLC and SOUTHEAST DEVELOPMENT OF CUMBERLAND, LLC, Defendants

Appeal by Defendant Manning from Order entered 17 December 2019, by Judge Mary Ann Tally in Cumberland County Superior Court. Heard in the Court of Appeals 10 February 2021.

*Brooks, Pierce, McClendon, Humphrey & Leonard, L.L.P, by Charles E. Coble and Walter L. Tippett, Jr., for plaintiff-appellee.*

*Hutchens Law Firm, by Natasha M. Barone, H. Terry Hutchens, J. Scott Flowers, and J. Haydon Ellis, for defendant-appellant Chris Manning.*

HAMPSON, Judge.

**Factual and Procedural Background**

Chris Manning (Defendant) appeals from the trial court's Order dated 17 December 2019, which granted John C. Culbreth, Jr., (Plaintiff), individually and derivatively on behalf of Southeast Development of Cumberland, LLC's (Southeast) Motion to Enforce Settlement Agreement, which included entering judgment against Defendant in the amount of $170,349.00. The Record reflects the following relevant facts:

Beginning in 2003, Plaintiff and Defendant formed Southeast, a member-managed, limited liability company organized in the State of North Carolina, of which they each owned a fifty-percent interest. In 2010, Plaintiff and Defendant began to dispute the management of Southeast.

Plaintiff filed a complaint alleging Defendant mismanaged finances and record keeping (the 2010 Action), and ultimately, on 14 February 2011, the Cumberland County Superior Court entered an Order (2011 Referee Order) appointing Lawrence W. Blake, CPA, as a referee under N.C. R. Civ. P. 53 to "collect, review and examine the financial, banking, corporate and other records of [Southeast]" to determine the members capital accounts, identify Southeast's assets and liabilities, and prepare a balance sheet and statement of profit and loss. The 2011 Referee Order directed Blake to file this report with the trial court on or before 6 June 2011, and provided: "This Court retains jurisdiction of this matter to enter further Orders necessary or

required by the Referee or the parties to enforce the terms of this Order." Accordingly, Blake filed reports on 3 June 2011, 16 August 2011, and again on 12 June 2012.

¶ 4        However, five years later, on 23 August 2017, Plaintiff derivatively on behalf of Southeast, instituted a second action against Defendant and Green Valley South LLC (Green Valley), a limited liability company of which Defendant owned a fifty-percent interest (the 2017 Action).

¶ 5        On 10 December 2018, the parties entered into a Settlement Agreement, agreeing "to resolve and to settle all controversies between them, including any claims each may have asserted or could have asserted in the Subject Actions[.]"[1] The Settlement Agreement provided in paragraph 2(e):

> Plaintiff and Defendant will reconcile their respective capital accounts in Southeast, pursuant to a report ("the Blake Report") to be prepared by L. W. Blake, CPA ("Blake"), who was previously appointed by the Court to serve as a referee in the 2010 Action. The Blake Report will be completed by February 29, 2019, and shall direct that either Plaintiff or Defendant shall make such payment within 30 days as is necessary to balance their Southeast capital accounts. The Blake Report shall be prepared consistent with the following terms:
>
> (i) Defendant shall deposit $25,000.00 (the "Blake Deposit") with Blake to pay his fees and expenses in completing the Blake Report. Defendant shall receive a credit toward his Southeast capital account equal to the amount of the Blake Deposit actually expended and to a refund of the remainder.

---

[1] The Settlement Agreement defined, "the 2010 Action and the 2017 Action may be referenced herein as 'the Subject Actions[.]' " (emphasis in original).

(ii) Plaintiff, Defendant, and their respective accounting and legal advisors shall be entitled to communicate with Blake in regard to his preparation of the Blake Report so long as any written communications are contemporaneously provide[d] to counsel for the other party. Blake shall be similarly entitled to seek information from the parties and their advisors.

(iii) Defendant shall be entitled to a credit toward his Southeast capital account equal to the Settlement Payment. Blake shall determine whether the Settlement Payment, or any portion thereof, should be deducted from Plaintiff's capital account.

(iv) The Blake Report shall be binding and not subject to appeal. It may be converted to a judgment in the 2010 Action upon the motion of either Plaintiff or Defendant if the party directed to make the required payment. If the party directed to make a payment completes his obligation to do so, then the 2010 Action shall be promptly dismissed by Plaintiff or by order of the Court, together with cancellations of all Notices of *Lis Pendens* and similar documents clouding title to real property that any Party has filed in regard to the 2010 Action.

(emphasis in original). In releasing the parties from all claims, the Settlement Agreement maintained "this release shall not be construed to release any claim arising in favor of or against any Party due to an alleged breach of this Agreement or failure to comply with the Blake Report."

¶ 6     The next day, on 11 December 2018, the parties filed a Joint Motion for Approval of Discontinuance of Derivative Proceedings. The parties' Joint Motion explained "the claims in File No. 10 CVS 2964 will be administered with the assistance of L.W. Blake, CPA, who was previously appointed by this Court as a

referee in that matter;" and provided the claims in the 2010 Action would be dismissed with prejudice "upon the completion of Mr. Blake's Report and the parties adherence thereto[.]" On 17 December 2018, the trial court entered an Order Approving Discontinuance of Derivative Proceedings (Approval Order), consistent with the parties' Joint Motion, which provided:

> The derivative claims in File No. 10 CVS 2964 shall be administered and adjudicated *as set forth in Settlement Agreement.* This Court shall retain jurisdiction for entry of a judgment or such other orders as may be necessary to enforce or complete the settlement, if necessary. Otherwise, Plaintiffs' counsel is authorized to file a dismissal of the derivative claims without further order of the Court[.]

(Emphasis added).

¶ 7      Then, on 18 October 2019, Plaintiff filed a Motion to Show Cause and for relief from the Approval Order on the basis that Blake failed to complete the Report by the 29 February 2019, date agreed upon in the Settlement Agreement. Plaintiff further alleged that on 21 June 2019, "Blake committed to complete his report by August 1, 2019." Yet, "Blake failed to complete his report by August 1, 2019[,] and, further, Blake "failed to communicate in any manner whatsoever since June 21, 2019" and did not respond to communications from counsel dated 19 September and 4 October 2019. On 22 October 2019, the trial court entered an Order for Completion of Capital Account Report (Completion Order), which ordered:

(1) On or before 5:00 P.M. on Tuesday, November 12, 2019, the Referee shall serve the report contemplated by paragraph 2(e) of the parties' Settlement Agreement to each of the parties' counsel of record; and

(2) The hearing on the Motion is continued . . . unless such matters have been rendered moot by the Referee's service of the report, as required above.

On 12 November 2019, Blake transmitted his Report (the Blake Report) to the trial court. The Blake Report provided, "As of December 31, 2018 the capital account of Chris Manning was a deficit of $501,965, the capital account of John C. Culbreth was a deficit of $331,616. I have attached Exhibit A to this letter." The Blake Report continued to identify: related parties, open assets or unpaid liabilities that Blake did *not* consider to be "related party entities," those open assets and unpaid liabilities that Blake *did* consider to be related party entities, partnership investments, settlement payments, cashless transfers of real estate, and a 2011 Curtailment Agreement with First Bank.

¶ 8        Blake also attached Exhibit B:

The purpose of Exhibit B is to provide the Court with a summary that may be useful in quantifying the facts and circumstances provided in previous paragraphs. As a starting point, Exhibit B uses the December 31, 2018 capital accounts as shown on Exhibit A. Calculation of the partner's capital accounts is my prime directive as described in paragraph 2(e) of your December 17, 2018 order. Presented in Exhibit B are three *additional financial groupings that are not strictly capital contributions or distributions.*

(emphasis added).

On 5 December 2019, Plaintiff, individually and derivatively on behalf of Southeast, filed a Motion to Enforce Settlement Agreement. In his Motion, Plaintiff requested the trial court enter a judgment directing Defendant pay Plaintiff $170,349.00—the difference in the deficits of Plaintiff and Defendant's respective capital accounts. The trial court heard Plaintiff's Motion on 16 December 2019. That morning, around fifteen minutes before the hearing began, Blake filed an Amendment to the Blake Report (the Amendment), "intended to be responsive to paragraph 3(e) [sic]" of the Approval Order.[2] The Amendment revised Exhibit B and stated "[b]ased on my calculations, the Plaintiff (Culbreth) is liable to the Defendant (Manning) in the amount of $261,530."

The next day, on 17 December 2019, "[a]fter considering all competent matters of record, including the verified Motion [to Enforce], with exhibits, and other proper evidence submitted in support and in opposition to the Motion, together with the applicable law and the arguments of counsel," the trial court entered its Order granting Plaintiff's Motion to Enforce the Settlement Agreement and entering

---

[2] The Record reflects that at 5:26 p.m. on 15 December 2019, counsel for Defendant sent Blake an email with the subject line "Referee's report," to "follow[ ] up on [an] earlier conversation." In the email, counsel requested "[Blake] consider filing an amendment to [the Blake] report as I have argued … is required under the Settlement Agreement and [the trial court's] order and in that amendment set out the amount which either or both part[ies] must pay to balance their respective capital accounts at Southeast."

Judgment against Defendant in the amount of $170,349.00 in 10 CVS 2964. Defendant timely appealed from the trial court's Order on 15 January 2020.

## Issues

The dispositive issues on appeal are whether (I) the trial court's Order is an order to enforce a settlement agreement or is an adoption of a referee's report under N.C. R. Civ. P. Rule 53 for purposes of applying the correct standard of review; and (II) in turn, applying the proper standard of review, the trial court erred in entering the Order granting Plaintiff's Motion to Enforce the Settlement Agreement and in entering Judgment against Defendant.

## Analysis

### I. Standard of Review

The status of the Blake Report as a Rule 53 referee report is relevant for the determination of the appropriate standard of review to apply to the trial court's Order. The parties dispute whether Blake was serving in his capacity as a referee under N.C. R. Civ. P. Rule 53 after the Settlement Agreement and Approval Order appointed him to create the Blake Report. Plaintiff contends, although not expressly appointed under Rule 53, Blake was acting his capacity as a Rule 53 referee because the Settlement Agreement and Approval Order directed him to review Southeast's records and to subsequently create and file the Blake Report with the trial court. Thus, when the trial court entered its Order to enforce the Settlement Agreement

and entered Judgment against Defendant, it was adopting the Blake Report as a referee report. *See* N.C. Gen. Stat. § 1A-1, Rule 53(g) (2019). Defendant argues the Order should be treated as captioned—as an order to enforce a settlement agreement.

¶ 13 "[O]ur standards of review are dictated by the substance of the motion under consideration and the type of hearing conducted . . . ." *Sfreddo v. Hicks*, 266 N.C. App. 84, 88, 831 S.E.2d 353, 356 (2019) (citation omitted). "Appellate review of factual findings made by a referee and adopted by the trial court is limited to whether the challenged findings were supported by any competent evidence. Challenged legal conclusions are reviewed *de novo*." *Bullock v. Tucker*, 262 N.C. App. 511, 518-19, 822 S.E.2d 654, 659 (2018) (citations and quotation marks omitted). Meanwhile, "[a] motion to enforce a settlement agreement is treated as a motion for summary judgment for purposes of appellate review[,]" *Williams v. Habul*, 219 N.C. App. 281, 288, 724 S.E.2d 104, 109 (2012) (citation and quotation marks omitted), and "[o]ur standard of review of an appeal from summary judgment is de novo[.]" *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008).

¶ 14 Under Rule 53 of the North Carolina Rules of Civil Procedure,

> the court may, upon the application of any party or on its own motion, order a reference in the following cases:
>
> a. Where the trial of an issue requires the examination of a long or complicated account; in which case the referee may be directed to hear and decide the whole issue, or to report upon any specific question of fact involved therein.

> b. Where the taking of an account is necessary for the information of the court before judgment, or for carrying a judgment or order into effect.

N.C. Gen. Stat. § 1A-1, Rule 53(a)(2) (2019).

¶ 15    Furthermore, "[t]he referee shall prepare a report upon the matters submitted to him by the order of reference and shall include therein his decision on all matters so submitted." *Id.* § 1A-1, Rule 53(g)(1). Once filed,

> All or any part of the report may be excepted to by any party within 30 days . . . . Thereafter, and upon 10 days' notice to the other parties, any party may apply to the judge for action on the report. The judge after hearing may adopt, modify or reject the report in whole or in part, render judgment, or may remand the proceedings to the referee with instructions.

*Id.* § 1A-1, Rule 53(g)(2).

¶ 16    The parties do not dispute Blake was originally appointed by the trial court in the 2011 Referee Order to serve as a Rule 53 referee, and further that Blake filed a series of three reports complying with the 2011 Referee Order. However, the 2011 Referee Order is the only order expressly appointing Blake as a referee. The current dispute is whether the Blake Report, created in accordance with the Settlement Agreement, was also done so as a Rule 53 referee's report.

¶ 17    Here, the Settlement Agreement and the trial court's Approval Order directed Blake to review the records of Southeast and to file a report including a balance sheet and statement of Southeast's profits and losses, as was consistent with Blake's role

under the 2011 Referee Order.  Such direction is also consistent with the function of Rule 53, which provides for a reference "[w]here the taking of an account is necessary for the information of the court before judgment, or for carrying a judgment or order into effect."  N.C. Gen. Stat. § 1A-1, Rule 53(a)(2)(b).

¶ 18          Furthermore, the trial court's Order for Completion of Capital Account Report, entered in 2019 upon a motion filed by Plaintiff after Blake failed to meet the deadline in the Settlement Agreement, stated "*the Referee* shall serve the report contemplated by paragraph 2(e) of the parties' Settlement Agreement to each of the parties' counsel of record . . . ."  (emphasis added).  Even further, in email communication dated the day before the 16 December 2019 hearing, Defendant's counsel communicated with Blake about the status and contents of the "Referee's report."

¶ 19          Thus, although Blake satisfied his initial role as contemplated in the 2011 Referee Order when he filed the three reports, the 2010 Action was not finally resolved until the trial court's December 2019 Order, from which this appeal was taken.[3]  Accordingly, it is apparent from the trial court's subsequent orders and the parties communications, Blake continued to serve as a Rule 53 referee until the entry of the trial court's Order in 2019.  The Blake Report, as contemplated in the parties' Settlement Agreement and the trial court's Approval Order, is a referee report.

---

[3] The $170,349.00 Judgment entered against Defendant was intended to finally resolve 10 CVS 2964 and is now part of Defendant's appeal.

Plaintiff's Motion to Enforce sought to enforce the findings of the Blake Report as incorporated by the Settlement Agreement "through entry of a judgment directing that Defendant [Manning] pay Culbreth $170,349.00." Thus, we review "factual findings made by a referee and adopted by the trial court" for "whether the challenged findings were supported by any competent evidence[,]" and conclusions of law made in accordance de novo. *Bullock*, 262 N.C. App. at 518-19, 822 S.E.2d at 659 (citation and quotation marks omitted).

## II. Settlement Agreement

¶ 20        Ultimately, Defendant "appeals the Court's interpretation of the Blake Report and the trial court's failure to require that all provisions of the Settlement Agreement were complied with prior to entering a judgment." Because we determined the Blake Report was indeed a Rule 53 referee report, "[a]ppellate review of factual findings made by a referee and adopted by the trial court is limited to whether the challenged findings were supported by any competent evidence." *Bullock*, 262 N.C. App. at 518, 822 S.E.2d at 659 (citation and quotation marks omitted). Any conclusions of law made in accordance are reviewed de novo. *Id.* at 519, 822 S.E.2d at 659.

¶ 21        Paragraph 2(e) of the Settlement Agreement directed "The Blake Report . . . shall direct that either Plaintiff or Defendant shall make such payment . . . as is necessary to *balance* their Southeast capital accounts." (emphasis added). The Blake Report, as submitted on 12 November 2019, reported: "Paragraph 2(e) directs me to

determine the capital account of each member of [Southeast]. As of December 31, 2018 the capital account of [Defendant] Manning was a deficit of $501,965, the capital account of [Plaintiff] Culbreth was a deficit of $331,616. I have attached Exhibit A to this letter." Exhibit A, attached to the Blake Report, reiterated the respective deficits and reports a combined total deficit of $833,581.00. The Blake Report also attached Exhibit B, which it clarified: "The purpose of Exhibit B is to provide the Court with a summary that may be useful in quantifying the facts and circumstances provided in previous paragraphs. . . . Presented in Exhibit B are three *additional financial groupings that are not strictly capital contributions or distributions*." (emphasis added).

¶ 22 Defendant contends the Blake Report—prior to the addition of the Amendment—was not responsive to paragraph 2(e) because it did not expressly direct either party to "make such payment . . . necessary to *balance* their Southeast capital accounts[,]" and therefore paragraph 2(e) was only satisfied when Blake filed his Amendment directing Plaintiff to pay Defendant $261,530.00 on 16 December 2019. Defendant further contends no competent evidence supports the trial court's decision to disregard Exhibit B.

¶ 23 Per the Blake Report, the respective capital accounts were as shown on Exhibit A: Defendant's deficit of $501,965.00 and Plaintiff's deficit of $331,616.00, combined for a total deficit of $833,581.00. Defendant's argument asserting no competent

evidence supports the trial court's decision to disregard Exhibit B is refuted by the language of Exhibit B—namely, the "three additional financial groupings" presented therein, "are not strictly capital contributions or distributions."

¶ 24        However, the trial court's subtraction of Plaintiff's $331,616.00 deficit from Defendant's $501,965.00 deficit, and the entry of judgment in the amount of the $170,349.00 difference, do not balance the two capital accounts.  Therefore, reviewing this finding for support from competent evidence, we conclude the entry of default judgment against Defendant in the amount of $170,349.00 is not supported by competent evidence in the Record, including the Blake Report.

¶ 25        Instead, as Defendant correctly notes on appeal, to balance the parties' respective capital accounts, the finally balanced accounts would need to have equal deficits.  To determine the amount required to balance the accounts, Plaintiff's $331,616.00 deficit and Defendant's $501,965.00 deficit would be added together, resulting in a combined deficit of $833,581.00, as shown in Exhibit A.  The $833,581.00 deficit would then be divided by the two capital accounts, showing the capital accounts would be balanced with equal deficits of $416,790.50.  Therefore, to ultimately balance the two Southeast capital accounts, Defendant would need to pay

Plaintiff $85,174.50, which would render the respective capital accounts with equal deficits of $416,790.50.[4]

Accordingly, the trial court's entry of Judgment against Defendant in the amount of $170,349.00 is not consistent with the Settlement Agreement's direction for the capital accounts to be balanced or with the Blake Report's findings. On remand, the trial court may consider all competent evidence before it. Consistent with Rule 53(g), the trial court "may adopt, modify or reject the report in whole or in part, render judgment, or may remand the proceedings to the referee with instructions." N.C. Gen. Stat. § 1A-1, Rule 53(g)(2).

## **Conclusion**

Accordingly, for the foregoing reasons, the trial court's Order to Enforce the Settlement Agreement and entering Judgment against Defendant is vacated. The matter is remanded to the trial court for further findings and proceedings in accordance with N.C.R. Civ. P. 53.

---

[4] Put another way and in the context of dissolving and winding-up the LLC, under this calculation, Defendant really owes *Southeast* $170,349.00 for distributions received in excess of his membership interest. In winding up the LLC, once Southeast "collects" the $170,349.00, *see* N.C. Gen. Stat. § 57D-6-07(d) (2019), Southeast's assets would be marshalled and applied by distributing "[t]he balance to the interest owners as distributions in the manner provided in G.S. 57D-4-03." *Id.* § 57D-6-08. N.C. Gen. Stat. § 57D-4-03 provides in relevant part: "Distributions to interest owners . . . after the dissolution of the LLC, may be made . . . in such amounts as determined by the LLC in proportion to the ratios that the aggregate combined contribution amounts of the interest owners bear to one another . . . ." *Id.* § 57D-4-03. Here, this would result in the $170,349.00 being distributed to each member according to their 50% interest, or $85,174.50 apiece.

VACATED AND REMANDED.

Judges TYSON and INMAN concur.